IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VICTAULIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 20-887 (CFC) (JLH) |
| v. | ) | |
| | ) | **REDACTED –** |
| ASC ENGINEERED SOLUTIONS, LLC, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

**VICTAULIC'S CONCISE STATEMENT OF FACTS AND RESPONSE TO
ASC'S CONCISE STATEMENT OF FACTS (D.I. 112)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
araucci@morrisnichols.com

OF COUNSEL:

Kenneth E. Keller
Colin T. Kemp
Christopher E. Stretch
Alekzandir Morton
PILLSBURY WINTHROP SHAW
   PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
(415) 983-1084

Bryan P. Collins
Benjamin L. Kiersz
PILLSBURY WINTHROP SHAW
   PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900

*Attorneys for Plaintiff Victaulic
Company*

Original Filing Date: October 29, 2021
Redacted Filing Date: November 12, 2021

## I.     RESPONSE TO ANVIL'S CONCISE STATEMENT OF FACTS (D.I. 112) ("CSOF")

1.     In 2012, Victaulic sued ASC in the Eastern District of Pennsylvania for infringement of U.S. Patent No. 7,712,796 ("the '796 Patent"). Ex. B ¶8. In its complaint, Victaulic alleged:

### THE INFRINGING PRODUCT – ANVIL'S SLIDELOK COUPLING

> Anvil's SlideLOK coupling … comprises two coupling segments held together by two pairs of bolts and nuts, with an inner gasket."

*Id*. at 3 (Heading) & ¶11.

**Victaulic's Response:** Undisputed.

2.     On October 12, 2016, ASC and Victaulic entered into an agreement ("the Settlement") "to settle, compromise, and resolve all claims and counterclaims" in Victaulic's Eastern District of Pennsylvania lawsuit and in other specified litigation pending in U.S. and Canadian federal courts. Ex. C at ANV0000183-84.

**Victaulic's Response:** Partially Disputed. The Settlement was executed on October 1<u>3</u>, 2016. Settlement at ANV0000202.

3.     The Settlement is governed by Delaware law. Ex. C §11.5(a).

2

**Victaulic's Response:** Undisputed.


4.      In the Settlement, Victaulic granted ASC the following license:

> The Victaulic Parties hereby grant to each of the Anvil Parties a
> nonexclusive, non-sublicenseable (except as otherwise expressly
> permitted herein), license under all necessary Rights currently existing
> or obtained in the future to make, have made, use, offer to sell, sell,
> have sold, export and have exported, import and have imported,
> distribute and have distributed or otherwise dispose of any Anvil
> Product in the Territory. "Rights" means, on a world-wide basis, any
> and all now-known or hereafter known patent rights, including,
> without limitation, (i) patents and other patent rights and (ii) all
> national, foreign and state registrations, applications for registration
> and all renewals and extensions thereof (including, without limitation,
> any continuations, continuations-in-part, divisional, reissues,
> substitutions and reexaminations).

Ex. C §2.6.

**Victaulic's Response:** Undisputed.


5.      The Settlement defines the licensed Anvil Products in part as follows:

> "Anvil Product" and the plural "Anvil Products" means Anvil
> International's SlideLOK couplings of all current [sizes] (and future
> sizes which are scaled versions of current sizes) as listed in and
> illustrated by the drawings in Schedule A regardless of industry or
> market throughout the Territory (the "Listed Couplings")[.]

Ex. C at ANV0000182.

**Victaulic's Response:** Undisputed.

3

6.      Among the Anvil Products listed in Schedule A are the SlideLOK mechanical couplings that ASC refers to as "Figure 7404" and "Figure 74." Ex. C at ANV0000203 (Item 1), ANV0000204-11 (product data sheets).

**Victaulic's Response:** Undisputed.

7.      What ASC refers to as the Figure 7404 coupling and the Figure 74 coupling each consist of two segments, two bolts, two nuts, and a gasket. Ex. C at ANV0000204, ANV0000208; Ex. B ¶11.

**Victaulic's Response:** Disputed. These couplings also include other components, e.g., "LUBRICATION", "paint," and "COATINGS." Ex. C at ANV0000204, ANV0000208.

8.      The installation instructions for each of the Figure 7404 and the Figure 74 state that the coupling may be installed by a first method that includes sliding the coupling "completely over the grooved pipe end." Ex. C at ANV0000206, ANV0000210 (showing "Method #1"). A second stated method of installation includes sliding the coupling "half way on to the pipe end or fitting," which is stated to "better accommodate fitting and valve accessories during installation." Id. at ANV0000206, ANV0000210 (showing "Method #2").

**Victaulic's Response:** Undisputed, but missing material context. These couplings do not include a pipe stop that would require, rather than merely permit, Method #2. *See* Material Fact 37, below.

9.     Schedule A also lists "SlideLOK fire protection coupling (Figure TBD)." Ex. C at ANV0000203 (Item 2). Engineering drawings labeled 'SLIDELOK™ C5" and "SLIDELOK™ FIG. 74FP/C5" are attached to the Settlement. Id. at ANV0000216-0000217.

**Victaulic's Response:** Partially Disputed. The quoted item number is "3", not "2".

10.    In the Settlement, ASC agreed to pay Victaulic a non-refundable settlement payment, as well as continuing royalty payments on sales of ASC's SlideLOK couplings. Ex. C §§4-5.

**Victaulic's Response:** Disputed. In the Settlement, ASC agreed to pay Victaulic continuing royalty payments on sales of Anvil Products as defined in the Settlement.

11.    In the Settlement, ASC agreed to "no longer substantively participate in the Reexamination Proceedings, including the Anvil Parties' undertaking any

adversarial activity that could lead to a finding that one or more claims of a

Victaulic U.S. Patent is unpatentable." Ex. C §3.2.

**Victaulic's Response:** Undisputed.


12.     Victaulic manufactures and sells the "VicFlex Series AH2-CC" (the

"AH2-CC product"). Ex. D. "CC" in the product name refers to a "captured

coupling." Ex. E at 90:3-11; Ex. F at 81:5-9.

**Victaulic's Response:** Undisputed.


13.     The AH2-CC product is for use in a fire protection system and is

described by Victaulic as including an "Installation-Ready" "'captured' coupling"

with a braided sprinkler hose. Ex. D; Ex. E at 90:3-11; Ex. F at 81:2-4.

**Victaulic's Response:** Disputed.  The AH2-CC product is a VICFLEX™

BRAIDED HOSE sprinkler fitting having a reducer, identification sleeve and

integral coupling captured on the end. Declaration of Frank J. Cygler ("Cygler

Decl.") at ¶ 13.

14.     At the time the Settlement was executed, the AH2-CC product was available to be sold. Ex. G at 11-12; Ex. D ("REV A 09/2016"); Ex. H (installation video dated Sept. 27, 2016).

**Victaulic's Response:** Undisputed.


15.     Victaulic was taking steps to prepare marketing materials for the AH2-CC product no later than August 19, 2016. Ex. I; Ex. F at 82:2-96:4.

**Victaulic's Response:** Undisputed.


16.     Of the two witnesses Victaulic designated as knowledgeable as to the negotiation and intent of the Settlement, one had seen a prototype or sample of the AH2-CC product before the Settlement was executed, and the other was aware of its development. Ex. J at 1-2; Ex. E at 94:3-7; Ex. F at 85:3-13, 93:2-23.

**Victaulic's Response:** Partially Disputed. Mr. Cygler testified that he "believe[d]" that he saw "some version" of the AH2-CC before the parties executed the Settlement. Ex. E at 94:3-7. Dr. Bucher became "aware of the development of" the AH2-CC but could not recall when that occurred. Ex. F at 85:3-13, 93:2-23.

17.     Victaulic concedes that what ASC refers to as the SlideLOK 74FP coupling is a licensed Anvil Product under the Settlement. Ex. K at 7 (Supp. Response to RFA4).

**Victaulic's Response:** Disputed to the extent that "what ASC refers to as the SlideLOK 74 FP coupling" is integrated into an SLT Product. *See* Counter Facts 31-43, below. Undisputed only to the extent that "what ASC refers to as the SlideLOK 74FP coupling" is a standalone coupling that is depicted in Schedule A of the Settlement, or an acceptable variation thereof under the definition of "Anvil Product" in the Settlement.

18.     What ASC refers to as the SlideLOK 74FP coupling consists of two segments, two bolts, two nuts, and a gasket. Ex. L at 164, 173.

**Victaulic's Response:** Disputed. This coupling also comprises other components, e.g., "lubrica[nt]", "paint," and "COATINGS." Ex. L at 164, 173. If "[w]hat ASC refers to as the SlideLOK 74FP coupling" is integrated into an SLT Product, the coupling also includes a Custom Pipe Element that is integrated into the coupling. Counter Fact 31, below.

19.     What ASC refers to as the SlideLOK 74FP coupling can be installed using Method #1 or Method #2. Ex. L at 167-68, 176.

**Victaulic's Response:** Undisputed to the extent that "[w]hat ASC refers to as the SlideLOK 74FP coupling" is a standalone coupling.

20.     ASC sells what it refers to as the SlideLOK 74FP coupling combined with another element. See, e.g., Ex. M, pp.28-29 ¶¶26-29; Ex. N ¶¶32-36. These products are comprised of what ASC refers to as the SlideLOK 74FP coupling and a pipe element. Ex. O at 110, 113, 131, 116, 129; Ex. Q at 32. Victaulic has accused these products of infringement. Ex. N ¶¶34-36 (the "Accused Products").

**Victaulic's Response:** Disputed. Victaulic accuses of infringement ASC's SLT Products (a.k.a. "Accused Products"), which integrate a Custom Pipe Element into the coupling. Material Fact 31, below. While the SLT Products may comprise some of the same structural components included in the SlideLOK 74FP coupling, the SLT Products do not comprise a SlideLOK 74FP coupling because the structure, appearance, functionality, and method of assembly of the coupling of the SLT Product is fundamentally different than the standalone the SlideLOK 74FP coupling. *See* Counter Facts 31-43.

21.     Each of the Accused Products consists of two segments, two bolts, two nuts, a gasket (what ASC refers to as the SlideLOK 74FP coupling), and a pipe element. Ex. N ¶¶34-36; Ex. O at 110, 113, 116, 119, 128, 131; Ex. Q at 32.

**Victaulic's Response:** Disputed. The Accused Products (a.k.a. SLT Products) do not include "what ASC refers to as the SlideLOK 74FP coupling," as explained above in response to Anvil's CSOF No. 20. *See* Counter Facts 31-43. The SLT Products comprise two segments, two bolts, two nuts, a gasket, and a Custom Pipe Element, but do not "consist[] of" only such components. For example, the FFP-XX-XX-SLT SLT Product comprises four segments. Ex. 40, pp. 1-2. The SLT Products may also include "[]lubrica[nt]," "[p]aint," and "[c]oatings." *Id*.


22.     Victaulic has not identified, or indicated that it intends to identify, any structural differences that it contends exist between (i) the segments, bolts, nuts, and gasket that are included in the Accused Products and (ii) the segments, bolts, nuts, and gasket that are included in the SlideLOK Figure 74FP coupling sold as a stand-alone product. Ex. K at 7-8; Ex. G at 9-17.

**Victaulic's Response:** Disputed. While the Accused/SLT Products may include some of the same components as in a standalone SlideLOK Figure 74FP coupling, the SLT Products' integration of a Custom Pipe Element results in structurally

altered segments, gasket, and coupling that are fundamentally different from the standalone SlideLOK Figure 74FP coupling in terms of structure, functionality, appearance, and method of assembly. Counter Facts 31-43, below.

23.     The only specific "one extra part" Victaulic has identified in any of the Accused Products as compared to the SlideLOK Figure 74FP coupling sold as a stand-alone product is the pipe element. Ex. G at 12-17.

**Victaulic's Response:** Undisputed, but lacking material context. Anvil's CSOF No. 23 mischaracterizes the structure, functionality, appearance, and method of assembly of the SLT Products by implying that the SLT Products comprise a combination of a standalone SlideLOK Figure 74FP coupling with a pre-installed pipe element. *See* Counter Facts 31-43, below. The coupling of the SLT Product never exists as a standalone coupling, and the Custom Pipe Element was never installed into a pre-existing coupling. Material Facts 40-41, below. ███████

████████████████████████████████████████

███████ *Id*. This integrated SLT Product is fundamentally different than a SlideLOK Figure 74FP coupling with a "companion" pipe element. Counter Facts 31-43, below.

24.     The parties agree that the Settlement is unambiguous. Ex. K at 6 (Response to RFA3).

**Victaulic's Response**: Undisputed, but lacking material context because the parties dispute the application of key clauses of the Settlement to the facts (e.g., whether the SLT Products are "Anvil Products" and the meaning of the word "necessary" as it modifies Rights). Ex. 1 at ANV0000182, ANV0000187.

25.     ASC prepared an initial draft of the Settlement. Ex. R; Ex. E at 44:20-46:6.

**Victaulic's Response**: Undisputed.

26.     On September 30, 2016, Victaulic transmitted to ASC "Victaulic Revisions to Selected Clauses from Anvil's Draft of 09-29-2016," which Victaulic stated were "Victaulic's revisions to key definitions, as well as the license …." Ex. S at VIC_000006341, VIC_000006344. Victaulic proposed altering the definition of the products that would be licensed, including by limiting them with reference to specific claims in specific Victaulic patents. Compare Ex. R at VIC_000006351 with Ex. S at VIC_ 000006344.

**Victaulic's Response:** Undisputed.

27.     On October 4, 2016, ASC transmitted to Victaulic a red-line markup of "Victaulic Revisions to Selected Clauses from Anvil's Draft of 09-29-2016." Ex. T. ASC deleted Victaulic's proposed revisions referring to specific claims in specific Victaulic patents. Id. at VIC_000007299; Ex. E at 53:9-55:25.

**Victaulic's Response:** Undisputed.

28.     In its October 4, 2016, markup, ASC commented in part:

> … The intent and purpos[e] of the agreement is to address all potential disputes between the parties regarding the Licensed Products. Victaulic demanded a product license rather than a patent license. A product license resolves all issues related to the Licensed Product.

Ex. T at VIC_000007300 (underlining in original); Ex. E at 53:9-55:25.

**Victaulic's Response:** Undisputed.

29.     In its October 4, 2016, markup, ASC commented in connection with the license provision specifically:

> The intent and purpos[e] of the agreement is to address all potential disputes between the parties regarding the Licensed Products. Victaulic demanded a product license rather than a patent license. A product license resolves all issues related to the Licensed Product. Victaulic may not restrict the product license to certain patents. Anvil is obtaining the right and license to make the Licensed Product.

Ex. T at VIC_000007301.

**Victaulic's Response:** Undisputed.

30.    In its October 4, 2016, markup, ASC deleted the language "under all

the Victaulic U.S. Patents" and added "all necessary" before "Rights" in the draft

license provision. Ex. T at VIC_000007301.

**Victaulic's Response:** Undisputed.

## II.    VICTAULIC'S CONCISE STATEMENT OF MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT FOR ANVIL

31.    Anvil's SLT line of products (e.g., SE5SLT, FP7074SLT, 20XXSF-

SLT, FFP-XX-XX-SLT) integrate a specially engineered custom pipe element

(shown in Exs. 15, 45) ("Custom Pipe Element") into a coupling to form an

integrated SLT product (collectively "SLT Products"). Exs. 37-44, p. 1 (illustrating

SLT Products); Ex. 45 ("FFP-SLT-XXX" Custom Pipe Element); Ex. 15 (STD-

7525 "SPECIFICATION FOR SLT® GROOVED END[]" Custom Pipe Element).

32.    Relative to standard grooved pipe elements (Ex. 14), the Custom Pipe

Element adds a retaining bead/rim and has an elongated end portion (dimension

"A"). Ex. 15.

33.     Anvil's SLT Products are not "Anvil Products," as defined in the parties' 2016 settlement agreement (Ex. 1) ("Agreement"). Ex. 1 at ANV0000182, ANV0000203-219; Cygler Decl. at ¶¶ 15-16; Material Fact 31.

34.     The SLT Products differ in structure and appearance from the Anvil Products listed in Schedule A of the Agreement (Ex. 1 at ANV0000203-219) by virtue of the SLT Products' inclusion of the Custom Pipe Element that is permanently integrated into the "coupling component" of the SLT Products. Material Facts 31-33; Exs. 37-44.

35.     The Custom Pipe Element of each SLT Product includes a bead/rim that retains the Custom Pipe Element within the "coupling component" of the SLT Product rendering the SLT Product a single, integrated product. Material Facts 31-33; Exs. 15, Ex. 41 at 2, and Ex. 45 (showing bead/rim); Exs. 42-44 (SLT Product cross-sections showing retention).

36.     As a result of the retention (Material Fact 35), the Custom Pipe Element is structurally incorporated into the coupling of the SLT Product, which alters the structure of at least the gasket and segments of the coupling of the SLT Product, relative to a standalone Anvil Product. Material Facts 31-35; Exs. 42-44.

37.     The Anvil Products listed in Schedule A of the Agreement permit the Anvil Product to slide completely over an end of a grooved pipe element, and lack a pipe stop that would limit the extent of such slide over. Ex. 1 at ANV0000203,

ANV0000204 ANV0000206, ANV0000210, ANV0000214, ANV000218; Exs. 7-8; Ex. 6 at ANV0057955 ("Our 74 coupling … does not have the pipe stop gasket."); Ex. 16 at brochure p. 3.

38.    The SLT Products' Custom Pipe Element (1) prevents each SLT Product's coupling from sliding completely over an end of a grooved pipe element to which the SLT Product is to be joined, and (2) forms a pipe stop that limits the extent to which an end of a grooved pipe element can be slid into the coupling, thereby helping to properly align the grooved pipe element with the SLT Product's coupling when the grooved pipe element is inserted into the coupling of the SLT Product. Exs. 42-44 (SLT Product cross-sections showing retention); Exs. 3-4.

39.    The SLT Products differ in functionality from the Anvil Products listed in the Agreement because (1) the SLT Products cannot slide completely over the end of a grooved pipe element to which the SLT Product is to be joined, and (2) the SLT Products' Custom Pipe Element helps to align the SLT Product with a grooved pipe element to which the SLT Product is to be joined. Material Facts 34-38.

40.    To manufacture each SLT Product, ███████████████████████ ██████████████████████. Ex. 9 at ANV0001260, ANV0001262-64 (sequential assembly of SLT Products); Exs. 10-13 (same).

41.    During manufacture of each SLT Products, the coupling of each SLT Product never exists as a standalone coupling, separate from the Custom Pipe Element. Material Fact 40.

42.    During manufacture of each Anvil Product listed in Schedule A of the Agreement, ████████████████████████████████████████ ██████. Material Fact 37; Ex. 1 at ANV0000203, ANV0000204 ANV0000206, ANV0000210, ANV0000214, ANV000218 (illustrating no structure within the couplings).

43.    The coupling of each SLT Product is not an "Anvil Product," as defined in the Agreement (Ex. 1 at ANV0000182), because the coupling of each SLT Product differs in structure, function, appearance, and/or method of assembly from the Anvil Products listed in Schedule A of the Agreement. Material Facts 31-42.

44.    The Current Victaulic Products listed in Schedule B of the Agreement each include a pipe stop that (1) prevents the Current Victaulic Product from sliding completely over an end of a grooved pipe element and (2) helps to align the groove-engaging surfaces of the Current Victaulic Products with the grooves of pipe elements to be joined using the Current Victaulic Products. Ex. 1 at ANV0000220, ANV0000224, ANV0000226,  ANV0000249, ANV0000256, ANV0000259; Ex. 26; Ex. 2 at 5:5-11, FIG. 10.

17

45.     Anvil has made and sold and continues to make and sell standalone Anvil Products without integrating such Anvil Products into an SLT Product. Ex. 1 at ANV0000185, ANV000187, ANV0000189, ANV0000203-219; Anvil's CSOF No. 10.

46.     The Anvil Products listed in Schedule A of the Agreement can be made, used, offered for sale, sold, exported, imported, distributed, or otherwise disposed of without integrating such Anvil Product into an SLT Product. Material Fact 45.

47.     A license to Victaulic's patents covering the use of an SLT Product is not "necessary …to make, have made, use, offer to sell, sell, have sold, export and have exported, import and have imported, distribute and have distributed or otherwise dispose of" any of the Anvil Products listed in Schedule A of the Agreement. Material Facts 45-46.

48.     Anvil contends that the coupling component of each SLT Product, but not the whole SLT Product, is an "Anvil Product" under the Agreement. Cygler Decl. at ¶¶ 15-16.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

*/s/ Brian P. Egan*

_____

Kenneth E. Keller
Colin T. Kemp
Christopher E. Stretch
Alekzandir Morton
PILLSBURY WINTHROP SHAW
   PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111
(415) 983-1084

Bryan P. Collins
Benjamin L. Kiersz
PILLSBURY WINTHROP SHAW
   PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA  22102-4856
(703) 770-7900

October 29, 2021

Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Victaulic*
*Company*

## <u>CERTIFICATE OF TYPE AND NUMBER LIMITATIONS</u>

I hereby certify that this document complies with the type, font, and word limitations specified in Judge Connolly's Standing Order Regarding Briefing in All Cases, dated November 6, 2019.  This document contains 1,705 words according to the word count feature of Microsoft Word and has been prepared in 14-point Times New Roman font. This word count does not include the repeated text from each of Defendant's asserted facts.

*/s/ Brian P. Egan*

Brian P. Egan (#6227)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 29, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 29, 2021, upon the following in the manner indicated:

Kenneth L. Dorsney, Esquire                     *VIA ELECTRONIC MAIL*
Cortlan S. Hitch, Esquire
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
*Attorneys for Defendant*

Todd E. Jones, Esquire                     *VIA ELECTRONIC MAIL*
Jeffrey R. Kuester, Esquire
Coby S. Nixon, Esquire
Seth K. Trimble, Esquire
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA  30339
*Attorneys for Defendant*

*/s/ Brian P. Egan*

_____

Brian P. Egan (#6227)