## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VICTAULIC COMPANY, | |
| Plaintiff, | |
| v. | Civil Action No. 1:20-cv-00887-CFC |
| ASC ENGINEERED SOLUTIONS, LLC, | |
| Defendant. | JURY TRIAL DEMANDED |
| ASC ENGINEERED SOLUTIONS, LLC, | |
| Counterclaim-Plaintiff, | |
| v. | |
| VICTAULIC COMPANY, | |
| Counterclaim-Defendant. | |

## DEFENDANT'S BRIEF IN SUPPORT OF
## <u>MOTION FOR BIFURCATION</u>

OF COUNSEL:

Todd E. Jones (*pro hac vice*)
Jeffrey R. Kuester (*pro hac vice*)
Coby S. Nixon (*pro hac vice*)
Seth K. Trimble (*pro hac vice*)
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
(770) 434-6868

Dated: July 21, 2022

MORRIS JAMES LLP
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
500 Delaware Ave., Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Defendant and
Counterclaim-Plaintiff ASC Engineered
Solutions, LLC*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ...............................1

SUMMARY OF ARGUMENT ...............................................................2

STATEMENT OF FACTS .......................................................................3

    I.     The Contract Issues That Are Central to This Dispute. ...........3

    II.    Victaulic's Infringement Case and Damages Claims................5

    III.   ASC's Invalidity Case. ..............................................................6

    IV.  Relevant Procedural Background. ............................................6

ARGUMENT ...........................................................................................8

    I.     Applicable Legal Standard. .......................................................8

    II.    Bifurcation Will Conserve Judicial and Party Resources. ........9

    III.   Bifurcation Will Ameliorate Complexity.................................12

    IV.  Bifurcation Will Allow for a Just Final Disposition of the Litigation
          and Avoid Prejudice. ..............................................................14

    V.    Under Appropriate Conditions, ASC Would Be Agreeable to Further
          Streamlining Trial in This Matter, Including Proceeding Without a
          Jury as to the Contract Issues. ...............................................15

CONCLUSION ......................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Ciena Corp. v. Corvis Corp.*,
  210 F.R.D. 519 (D. Del. 2002) ................................................................. 8, 9, 12

*Cornell Univ. v. Illumina, Inc.*,
  No. 10-cv-433-LPS-MPT (D. Del. Oct. 11, 2011) ................................................9

*Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*,
  No. 08-cv-343-SLR, 2009 U.S. Dist. LEXIS 76006 (D. Del. Aug. 26, 2009).......8

*Enzo Life Scis., Inc. v. Digene Corp.*,
  No. 02-212-JJF, 2003 U.S. Dist. LEXIS 10202 (D. Del. June 10, 2003) ..... 14, 15

*Gardco Mfg., Inc. v. Herst Lighting Co.*,
  820 F.2d 1209 (Fed. Cir. 1987) ................................................................. 8, 9, 15

*GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.*,
  270 F. Supp. 2d 476 (D. Del. 2003)................................................................12

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)................................................................................11

*In re Innotron Diagnostics*,
  800 F.2d 1077 (Fed. Cir. 1986) ................................................................9

*Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*,
  757 F. Supp. 2d 431 (D. Del. 2010)................................................................10

*Leighton Techs. LLC v. Oberthur Card Sys.*,
  531 F. Supp. 2d 591 (S.D.N.Y. 2008) ................................................................9

*Purdue Pharma L.P. v. Endo Pharm., Inc.*,
  438 F.3d 1123 (Fed. Cir. 2006) ................................................................9

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
  30 F.4th 1109 (Fed. Cir. 2022) ................................................................ 10, 11

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
  503 F. Supp. 3d 156 (D. Del. 2020)................................................................10

## STATUTES

35 U.S.C. § 103 ................................................................................................ 6, 13

35 U.S.C. § 112 ................................................................................................ 6, 13

35 U.S.C. § 271(b) .............................................................................................. 11

35 U.S.C. § 271(c) .............................................................................................. 11

## RULES

Fed. R. Civ. P. 16(c)(2)(M) .................................................................................. 8

Fed. R. Civ. P. 42(b) ........................................................................................ 8, 9

**INTRODUCTION**

Defendant ASC Engineered Solutions, LLC ("ASC")[1] respectfully submits this brief in support of its motion to bifurcate contract issues from patent issues at trial.

**NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiff Victaulic Company ("Victaulic") filed this action against ASC on June 30, 2020, alleging infringement of three patents related to pipe couplings. (D.I.1).   Following claim construction, the Court entered the parties' stipulated judgment of noninfringement of two of the patents (D.I. 152, 153), leaving U.S. Patent No. 7,712,796 ("the '796 Patent") as the sole patent-in-suit.  Fact and expert discovery are now closed.  (D.I. 31, 187, 207).

The Court granted ASC leave to file an early summary judgment motion relating to its licensing defense, which ASC filed on October 1, 2021.  (D.I. 110). The Court denied that motion on December 15, 2021.  Victaulic filed three motions for partial summary judgment on May 10, 2022, relating to infringement and invalidity, which are currently pending.  (D.I. 193, 197, 201).   None of these motions, nor all of them collectively, would fully resolve either infringement or invalidity.  On May 18, 2022, ASC filed its *Daubert* motion, which is also pending. (D.I. 212).

---

[1] Formerly Anvil International, LLC.  (D.I. 79).

A five-day trial is scheduled to begin on October 17, 2022.  (D.I. 31).

## SUMMARY OF ARGUMENT

This case has proceeded toward trial against the backdrop of a settlement agreement that resolved disputes in multiple forums between the parties involving the same patent and the same technology now before the Court.  The settlement agreement should now become the initial focal point at trial, separate from the complex patent issues in the case, in the final phase of this litigation.

Trial of the contract issues first would conserve significant judicial and party resources because resolution of those issues may eliminate the need for a more technically involved and expensive jury trial on infringement, invalidity, and damages—all the subject of motions currently pending before the Court.  Victaulic will not be able to prosecute its patent case at all if its infringement allegations are barred by the parties' settlement agreement, and trial on ASC's other defenses would be unnecessary.  Moreover, even if ASC were to prevail only in establishing that it had a good faith belief that its conduct at issue was authorized, the scope of this litigation would be drastically reduced in eliminating all of Victaulic's indirect-infringement claims—which comprise the bulk of its case and the basis for its lost profits and convoyed sales claims—as well as its willfulness claim.

Separation of the contract and patent issues will also have other benefits.  The manageability and comprehensibility of all of the issues in the case will be enhanced

by allowing jurors to focus on fewer issues at a time, avoiding overwhelming a jury and assisting them in understanding the parties' respective claims individually on their merits.  These advantages are particularly meaningful in light of the complex issues posed by Federal patent law and the need for the jury to make informed decisions that will have ramifications beyond this case.  Bifurcation would also lead to a just final disposition of the litigation and avoid further prejudice to ASC from delay in resolving its rights under the settlement agreement, which logically and chronologically precede Victaulic's infringement claims.

If the contract issues are separated from the patent issues, ASC would be willing to forgo its jury demand as to Counterclaims I and II, and to dismiss without prejudice its other defenses if it prevails on the contract issues, which would further increase the benefits of bifurcation.

## STATEMENT OF FACTS

## I.     The Contract Issues That Are Central to This Dispute.

The facts and pleadings in this litigation involve case-dispositive contract issues unrelated to the complex patent issues of infringement, invalidity, damages, and willfulness.  In 2016, the parties settled a series of legal and administrative actions involving patents and products that included the '796 Patent and ASC's

SlideLOK 74FP pipe coupling.  (D.I. 22 at ¶¶ 15-17, 21).[2]  The resulting agreement (the "Settlement Agreement") sets forth, among other things, a license grant, release, and covenant not to sue from Victaulic to ASC, and resolved all the parties' claims and counterclaims relating to ASC's SlideLOK couplings and Victaulic's patents. (*Id.* at Ex. A §§ 2.5, 2.6).  ASC proceeded to pay royalties pursuant to that Settlement Agreement and continues to do so.  (D.I. 22 at ¶ 25).  After ASC combined the SlideLOK 74FP coupling with another preinstalled element such as a fire sprinkler hose, an end cap, or an end of line fitting (the "Accused Products"), Victaulic accused ASC of infringement and filed the instant lawsuit.

The threshold dispute between the parties is whether the allegedly infringing conduct is authorized by the Settlement Agreement.  ASC's Counterclaim Count I seeks a judicial declaration that all of Victaulic's patent infringement claims are barred by the license grant or the covenant not to sue, or both, under the Settlement Agreement.  (*Id.* at Counterclaim Count I).  In addition, ASC's defenses assert that this suit is barred by the Settlement Agreement, and Counterclaim Count II asserts breach of contract based on the Settlement Agreement.  (*Id.* at Fourth and Fifth Defenses, p. 20, Counterclaim Count II).

---

[2] Citations to paragraph numbers in ASC's First Amended Answer, Affirmative Defenses, and Counterclaims (D.I. 22) refer to paragraphs in ASC's counterclaims.

## II.   Victaulic's Infringement Case and Damages Claims.

Victaulic asserts infringement of more than twenty-five claims of the '796 patent, raising theories of direct infringement, induced infringement, contributory infringement, and infringement under the doctrine of equivalents.  (D.I. 1 at Count I; Ex.[3] A at 2-3).  The parties have collectively served four expert reports related to infringement.

As to direct infringement, Victaulic alleges that ASC and its agents are liable based on acts of:  (i) testing of the accused products to obtain public-safety and insurance-related certifications by Underwriters Laboratories, Inc., and Factory Mutual Global; (ii) sales of the Accused Products with a second pipe element as part of a kit; and (iii) demonstrations of the use of the Accused Products with a second pipe element.  (Ex. A at 4-5).

Victaulic's indirect-infringement claims are based on the alleged direct infringement of third parties, primarily ASC's customers and end users of the Accused Products.  (*Id.* at 4-7).  According to Victaulic, "On information and belief, ASC does not have, nor could it have had, a good faith belief that the infringement by ASC, its customers, and/or other third parties using the SLT Products is non-infringing or licensed under the '796 patent."  (*Id.* at 7).

---

[3] Unless associated with another filing as noted, "Ex." refers to the exhibits attached to the Declaration of Coby S. Nixon in Support of Defendant's Motion for Bifurcation, filed contemporaneously herewith.

Victaulic seeks damages in the form of lost profits, including convoyed sales, and enhanced damages based on alleged willful infringement.  (D.I. 1 at Count I).  The parties have collectively served three expert reports related to damages.

### III.    ASC's Invalidity Case.

ASC asserts that the '796 Patent is invalid on grounds of indefiniteness under 35 U.S.C. § 112 and obviousness under 35 U.S.C. § 103.  (D.I. 22 at Counterclaim Count IV).  The parties have collectively served three expert reports related to invalidity.

### IV.    Relevant Procedural Background.

Even before this suit was filed, ASC raised separation of the contract issues from the patent issues in an effort to resolve the parties' dispute in an efficient manner.  (D.I. 46, Ex. A at 1; *see also* D.I. 22 at ¶ 3 ("The judicial declarations sought by Counts I and II of [ASC]'s Counterclaims should be bifurcated for purposes of discovery and bench trial and can be granted by the Court without needing to determine the enforceability, validity or infringement of the Asserted Patents as required by the claims in Victaulic's Complaint.")).  Victaulic acknowledged the value of bifurcation, stating:

> [W]e understand the point that the licensing issue could have effect on the scope of the case, and would be amenable if things have to move forward to the litigation phase to accommodating that some way into the scheduling. How that happens may depend on the judge, but we think the basic notion of resolving the contours of what is and is not licensed earlier in the case is something that can be worked out.

(D.I. 50 at 18).  Nevertheless, when ASC sought to stay the patent issues in this case (D.I. 28), Victaulic opposed (D.I. 41).

Although denying ASC's motion to stay (6/17/2021 Oral Order), the Court allowed ASC to file an early summary judgment motion seeking a declaration that Victaulic's claims of infringement were barred by the Settlement Agreement. (6/15/2021 Hearing Tr. at 68:3-73:8; D.I. 78; D.I. 123 at 8-9).  ASC agreed to forgo filing any other summary judgment motions.  The parties proceeded through discovery related to ASC's summary judgment motion according to a specific schedule (D.I. 78) in parallel with the rest of the case.  On October 1, 2021, ASC filed its summary judgment motion based on the definition of the licensed products and a specific provision in the Settlement Agreement.  (D.I. 110).

The Court ultimately denied ASC's motion (12/15/2021 Hearing Tr. at 47:24, 49:8)[4] but noted:

> The reason I allowed this motion, because I was persuaded that this was a fair and more efficient way to resolve this case and *I still think that there may be a way to do that here*.
> …
> I understand why the motion was brought.  I get it.  It was not a frivolous motion ….

(*Id.* at 49:12-15, 50:10-11) (emphasis added).  ASC accordingly seeks to bifurcate contract issues from patent issues at trial as an efficient and fair way to resolve the

---

[4] The Court has not yet issued a separate written opinion and order.

case, with contract issues to be tried first and issues of infringement, invalidity, damages, and willfulness tried only if there is a finding that the allegedly infringing conduct is not authorized under the Settlement Agreement.

## ARGUMENT

### I.   Applicable Legal Standard.

Under Federal Rule of Civil Procedure 42, "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b); *see also* Fed. R. Civ. P. 16(c)(2)(M) ("At any pretrial conference, the court may consider and take appropriate action on the following matters: … ordering a separate trial under Rule 42(b) of a claim, counterclaim, crossclaim, third-party claim, or particular issue.").  "[A] district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management."  *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987).  In patent cases in particular, "bifurcation is an important discretionary tool that district courts can use … to ensure that the cases are resolved in a just manner by juries that understand the complex issues before them."  *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002); *see also Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*, No. 08-cv-343-SLR, 2009 U.S. Dist. LEXIS 76006, at *2 (D. Del. Aug. 26, 2009) ("[B]ifurcation is appropriate, if

not necessary, in all but exceptional patent cases."). Trial of a defense before liability issues and separation of non-patent and patent issues are appropriate and effective uses of bifurcation. *See, e.g., Gardco*, 820 F.2d at 1213 (affirming district court decision to try defense before infringement and invalidity); *Purdue Pharma L.P. v. Endo Pharm., Inc.*, 438 F.3d 1123, 1128 (Fed. Cir. 2006) (noting that trial court had bifurcated patent claims from antitrust and unfair trade claims); *Cornell Univ. v. Illumina, Inc.*, No. 10-cv-433-LPS-MPT, D.I. 79 (D. Del. Oct. 11, 2011) (granting motion to bifurcate covenant not to sue from patent issues); *Leighton Techs. LLC v. Oberthur Card Sys.*, 531 F. Supp. 2d 591, 596 (S.D.N.Y. 2008) (separating and trying defense first "[b]ecause resolution of that issue would dispose of the case," including "a long trial on some of the technical issues relating to prior art and obviousness").

Courts consider several factors when determining whether to exercise their discretion to bifurcate a case, including whether bifurcation will conserve judicial resources, enhance juror comprehension, avoid prejudice, and result in a just final disposition of the litigation. *Ciena Corp.*, 210 F.R.D. at 520-21; *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986).

## II.   Bifurcation Will Conserve Judicial and Party Resources.

The Rule 42(b) criteria in favor of bifurcation "to expedite and economize" alone provide a sufficient and compelling basis to separate the contract issues from

the patent issues in this case.  Resolution of the contract issues in ASC's favor would render all other issues—including those in the pending motions for partial summary judgment—irrelevant.  Bifurcation would thus conserve Court and party resources by eliminating the need to try complicated and time-consuming issues of infringement, invalidity, damages, and willfulness, as well as ASC's other defenses. *See, e.g., Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*, 757 F. Supp. 2d 431, 442 (D. Del. 2010) (noting "[j]udicial resources may be conserved through bifurcation, as liability may not be found").

Significantly, even if ASC does not prevail regarding the scope of the Settlement Agreement, the issues related to the Settlement Agreement still have the potential to eliminate the bulk of Victaulic's infringement allegations, as well as other related issues.  Upon even a conclusion that ASC had a good-faith basis for believing that its inclusion of the 74FP coupling in the Accused Products was authorized, Victaulic's indirect-infringement claims, its sole damages theory (lost profits), and the issue of willfulness would also be completely resolved.  As the Federal Circuit recently held, a good faith belief that conduct is noninfringing based on a reasonable license interpretation requires judgment as a matter of law as to induced infringement and would also be inconsistent with a finding of willfulness. *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1117-19 (Fed. Cir. 2022); *see also Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,

503 F. Supp. 3d 156, 173, No. 17-cv-189-LPS (D. Del. 2020) (concluding that, although jury sided with patentee as to scope of license at issue, defendant's "interpretation of the operative contracts was entirely reasonable, as the Court explained during the summary judgment stage").  Victaulic's claims of contributory infringement would be likewise affected, as the knowledge required for induced infringement under 35 U.S.C. § 271(b) is the same as the knowledge required under section 271(c) for contributory infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011); *see also Roche*, 30 F.4th at 1118 (relying on *Global-Tech*).  Under the foregoing precedents, establishing ASC's good faith belief that its conduct was licensed leaves little of Victaulic's case to be resolved.

The efficiencies gained from resolution of the contract issues extend beyond the '796 Patent, further warranting a separate trial with the Settlement Agreement front and center.  Victaulic has threated litigation over additional patents based on the same Accused Products. (Ex. B (stating intent to file suit for infringement of patents issuing from then-pending application, including the application leading to now-issued U.S. Patent 11,060,639); Ex. C (alleging infringement of U.S. Patent No. 10,962,152)).  Although Victaulic may dispute whether some of those looming patents and applications are within the scope of the Settlement Agreement, at least one of them is expressly within the definition of the "Victaulic U.S. Patents" in the

Settlement Agreement.  Clarity as to the scope of the license will accordingly have effect and efficiencies even beyond this litigation.

## III.   Bifurcation Will Ameliorate Complexity.

In patent cases, bifurcation is common to reduce the intricacy of the issues and the volume and complexity of the evidence.  *See, e.g., Ciena*, 210 F.R.D. at 521.  The parties agree that dispositive portions of the Settlement Agreement are unambiguous (D.I. 113, Ex. K  at 6 (Response to RFA3)), and its construction is a question of law, *see, e.g., GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.*, 270 F. Supp. 2d 476, 481 (D. Del. 2003).  The contract issues require resolution of two simple questions:  (1) Are ASC's actions with respect to the Accused Products authorized under the Settlement Agreement?  (2)  If not, did ASC have a good faith belief that those actions were authorized under the Settlement Agreement?

In contrast, the Federal patent issues are far more complicated and are based on unique legal issues and analyses unfamiliar to most lay jurors.  For example, Victaulic's infringement case involves over twenty-five asserted claims mapped out in a seventy-page claim chart, numerous theories of infringement, and opinions from three technical experts.  Victaulic has identified six different Accused Products, and the jury will be tasked with individually determining for each of the claims whether each Accused Product meets all of the claim limitations under the correct constructions.  For invalidity based on prior art, there are four key references,

including in various combinations for obviousness, with numerous subsidiary factual and scientific issues, involved.  The invalidity issues under 35 U.S.C. § 103 also implicate the protracted administrative reexamination proceedings that took place in the U.S. Patent and Trademark Office that spanned over five years, with the parties thus far relying on hundreds (out of thousands) of pages of documents and testimony from experts and affiants. And the invalidity issues under 35 U.S.C. § 112 involve two different claim limitations, one of which was the subject of a Certificate of Correction, and expert opinions.  Lastly, the damages issues also involve financial and economic issues under the law, burdens of proof relating to lost profits and convoyed sales, and additional expert testimony, with no connection to the contract issues.  The jury will have to digest and understand all of the foregoing complicated issues related solely to patent law to make findings related to infringement, invalidity, and damages.

In addition to being legally distinct, these patent issues are also predicated on different evidence.  For example, the parties designated only three witnesses in total for purposes of ASC's summary judgment motion, none of whom are expert witnesses.  (Ex. D; D.I. 113, Ex. J).[5]  Of the material facts that Victaulic identified

---

[5] Although Victaulic's technical expert later offered opinions on contract issues (Ex. F at 2 (Heading VI)), that testimony is irrelevant; is unrelated to issues of infringement or invalidity, as is seen by the clear delineation of discrete topics in Dr. Swanger's reports (*id.* at 2-3 (table of contents); Ex. G at 2-7 (same); Ex. H at 2-3 (same)); and is a relatively small fraction of his opinions overall—approximately 42

as allegedly preventing summary judgment in ASC's favor (Ex. Eat 52), none relates to patent issues.

In sum, the contract and patent issues are divisible into distinct categories with little to no overlap in analysis and proof.  Separation of the issues would thus enhance juror comprehension by limiting the number of legal issues the jury must address at any given time and by allowing the parties to present the evidence in a compartmentalized manner that is easier for jurors to understand.  *Enzo Life Scis., Inc. v. Digene Corp.*, No. 02-212-JJF, 2003 U.S. Dist. LEXIS 10202, at \*16-17 (D. Del. June 10, 2003) (noting that separating patent claims from business tort counterclaims would prevent jury confusion).

## IV.    Bifurcation Will Allow for a Just Final Disposition of the Litigation and Avoid Prejudice.

All of the efficiencies and advantages noted above inure to both ASC and Victaulic.  Bifurcation will also avoid further prejudice to ASC, which has defended this costly litigation, although being forced to do so has undermined the very purpose of the Settlement Agreement to ASC.  In addition, separation of the contract and patent issues would avoid clouding the jury's judgment on the contract issues—

---

pages out of 311.  At worst, if technical experts have to testify more than once, they can likely logically be scheduled for consecutive days, should the case proceed to the patent issues.

which will have a significant impact beyond this litigation given Victaulic's threats of additional future suits—through any conclusions on infringement liability.

## V.     Under Appropriate Conditions, ASC Would Be Agreeable to Further Streamlining Trial in This Matter, Including Proceeding Without a Jury as to the Contract Issues.

All of the above benefits of bifurcation would increase if the contract issues were resolved by bench trial. *See, e.g., Gardco*, 820 F.2d at 1213 (affirming district court decision to try defense through nonjury trial, with infringement and invalidity tried to jury). Under appropriate circumstances, ASC would be willing to forgo a jury as to the contract issues (to the extent that there are any issues triable by a jury that remain) and to consider other stipulations such as dismissing its remaining counterclaims and defenses without prejudice should it prevail on the contract issues. Additional benefits might be obtained through further separation of the issues, such as willfulness and damages from liability. *See, e.g., Enzo Life Scis.*, 2003 U.S. Dist. LEXIS 10202, at *17 ("In the context of patent cases, experienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury.") (citation and internal quotations omitted); *see also* Form Scheduling Order for Non-Hatch-Waxman Patent Cases in Which Infringement Is Alleged, Revised April 18, 2022, ¶ 27 (setting out Court's current practice). ASC would welcome the opportunity to discuss these issues with the Court.

## CONCLUSION

The scope of the Settlement Agreement is the inflection point of this litigation.  Separating the contract issues from the patent issues, with the contract issues tried first, will efficiently facilitate both the Court's role and the jury's role—should a jury even be necessary—in resolving this case.  ASC paid handsomely to buy freedom from the very suit it has been forced to litigate and should be allowed to recoup more benefit of the bargain it struck with the Settlement Agreement.  ASC accordingly respectfully requests that the Court enter an Order separating the contract issues from the patent issues for trial

Dated: July 21, 2022

|                                              | Respectfully submitted,                     |
| -------------------------------------------- | ------------------------------------------- |
| OF COUNSEL:                                  | MORRIS JAMES LLP                            |
|                                              |                                             |
| TAYLOR ENGLISH DUMA LLP                      |   */s/ Kenneth L. Dorsney*                  |
| Todd E. Jones (*pro hac vice*)               | Kenneth L. Dorsney (#3726)                  |
| Jeffrey R. Kuester (*pro hac vice*)          | Cortlan S. Hitch (#6720)                    |
| Coby S. Nixon (*pro hac vice*)               | 500 Delaware Ave., Suite 1500               |
| Seth K. Trimble (*pro hac vice*)             | Wilmington, DE 19801-1494                   |
| 1600 Parkwood Circle, Suite 200              | (302) 888-6800                              |
| Atlanta, GA 30339                            | kdorsney@morrisjames.com                    |
| (770) 434-6868                               | chitch@morrisjames.com                      |
| tjones@taylorenglish.com                     |                                             |
| jkuester@taylorenglish.com                   | *Attorneys for Defendant and*               |
| cnixon@taylorenglish.com                     | *Counterclaim-Plaintiff ASC*                |
| strimble@taylorenglish.com                   | *Engineered Solutions, LLC*                 |

## CERTIFICATE OF COMPLIANCE WITH
## STANDING ORDER REGARDING BRIEFING

Pursuant to the November 6, 2019, Standing Order Regarding Briefing in All

Cases, I certify that the font of this brief is Times New Roman, the type is 14-point,

and the total word count is 3,638 words as calculated by the word-processing system

used to prepare the filing.


Dated: July 21, 2022                    Respectfully submitted,


                                        MORRIS JAMES LLP

                                        */s/ Kenneth L. Dorsney*
                                        Kenneth L. Dorsney (#3726)
                                        Cortlan S. Hitch (#6720)
                                        500 Delaware Ave., Suite 1500
                                        Wilmington, DE 19801-1494
                                        (302) 888-68
                                        kdorsney@morrisjames.com
                                        chitch@morrisjames.com


                                        *Attorneys for Defendant and Counterclaim-*
                                        *Plaintiff ASC Engineered Solutions, LLC*