## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VICTAULIC COMPANY, | |
| Plaintiff, | |
| v. | Civil Action No. 1:20-cv-00887-CFC |
| ASC ENGINEERED SOLUTIONS, LLC, | |
| Defendant. | JURY TRIAL DEMANDED |
| ASC ENGINEERED SOLUTIONS, LLC, | |
| Counterclaim-Plaintiff, | |
| v. | |
| VICTAULIC COMPANY, | |
| Counterclaim-Defendant. | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF
## <u>MOTION FOR BIFURCATION</u>

OF COUNSEL:

Todd E. Jones (*pro hac vice*)
Jeffrey R. Kuester (*pro hac vice*)
Coby S. Nixon (*pro hac vice*)
Seth K. Trimble (*pro hac vice*)
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
(770) 434-6868

MORRIS JAMES LLP
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
500 Delaware Ave., Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Defendant and*
*Counterclaim-Plaintiff ASC Engineered*
*Solutions, LLC*

Dated: August 11, 2022

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

ARGUMENT ................................................................................................1

   I.   The Possibility of Preservation of Judicial Resources Counsels in Favor of Bifurcation. ..................................................................1

   II.   The Purported Inefficiencies Victaulic Cites Are Illusory and of Victaulic's Own Making. ..............................................................4

   III.   Victaulic Discounts the Benefits of Bifurcation on Judicial Resources. ..........................................................................6

   IV.   Victaulic's Claims of Prejudice and Jury Confusion Are Baseless. ...........7

   V.   Victaulic's Entrenched Position Is Unhelpful to Efficient and Orderly Trial of This Case. ......................................................8

CONCLUSION .............................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Akzona, Inc. v. E. I. Du Pont de Nemours & Co.*,
  607 F. Supp. 227 (D. Del. 1984) ..................................................................2, 5

*British Telcoms. PLC v. Google Inc.*,
  No. 11-cv-1249-LPS, 2013 U.S. Dist. LEXIS 101847 (D. Del. July 22, 2013) ....1

*Ciena Corp. v. Corvis Corp.*,
  352 F. Supp. 2d 526 (D. Del. 2005) ..................................................................9

*Cordis Corp. v. Boston Sci. Corp.*,
  868 F. Supp. 2d 342 (D. Del. June 19, 2012) ....................................................9

*Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*,
  No. 08-cv-343-SLR, 2009 U.S. Dist. LEXIS 76006 (D. Del. Aug. 26, 2009).......7

*Eurand Inc. v. Mylan Pharm., Inc.*,
  No. 08-889-SLR, 2009 U.S. Dist. LEXIS 92542 (D. Del. Oct. 1, 2009) ..............2

*Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*,
  757 F. Supp. 2d 431 (D. Del. 2010) ..................................................................1

*O'Brien v. Progressive Northern Ins. Co.*,
  785 A.2d 281 (Del. 2001) ................................................................................9

*Purdue Pharma L.P. v. Collegium NF, LLC*,
  No. 18-cv-226-CFC (D. Del. Dec. 10, 2018) ......................................................6

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
  30 F.4th 1109 (Fed. Cir. 2022) ....................................................................2, 3

*Samuels v. Albert Einstein Med. Ctr.*,
  No. 97-cv-3448, 1998 U.S. Dist. LEXIS 17320 (E.D. Pa. Nov. 4, 1998).............6

*Smith v. Alyeska Pipeline Serv. Co.*,
  538 F. Supp. 977  (D. Del. 1982).....................................................................2

*Swofford v. B&W, Inc.*,
  34 F.R.D. 15 (S.D. Tex. 1963)..........................................................................2

*Unwired Planet, LLC v. Google Inc.*,
   No. 3:12-cv-00504-MMD-VPC, 2014 U.S. Dist. LEXIS 173778 (D. Nev. Dec.
   12, 2014) ...................................................................................................................5

**RULES**

Fed. R. Civ. P. 16(c)(2)(M)..........................................................................................8

Fed. R. Civ. P. 42 .......................................................................................................1

# INTRODUCTION

The Court should separate the contract and patent issues for trial to efficiently and fairly bring this dispute to a close.

# ARGUMENT

## I.    The Possibility of Preservation of Judicial Resources Counsels in Favor of Bifurcation.

Contrary to Victaulic's arguments (D.I. 261 at 4, 10), weighing the efficiencies to be gained if ASC were to prevail on the contract issues is proper in the bifurcation analysis, although ASC's position is not "based entirely" on that premise (*id.* at 4) in any event.   First, part of the Rule 42 rationale ("[f]or convenience … or to … economize") for bifurcation inherently considers whether rulings on some issues may be unnecessary due to resolution of a different issue or claim in one party's favor first.  For example, bifurcation of liability and damages is efficient in part because damages *may* be entirely unnecessary.  In *Laboratory Skin Care, Inc. v. Ltd. Brands, Inc.*, 757 F. Supp. 2d 431 (D. Del. 2010), the court noted the movant's persuasive argument that "a verdict of non-infringement in the first trial would obviate the need for a second trial, thus promoting judicial economy" and decided to try infringement separately from damages and willfulness.  *Id.* at 441-42.  The court explained, "Judicial resources *may* be conserved through bifurcation, as liability *may* not be found."  *Id.* at 442 (emphasis added); *see also British Telcoms. PLC v. Google Inc.*, No. 11-cv-1249-LPS, 2013 U.S. Dist. LEXIS 101847, at *3-5

1

(D. Del. July 22, 2013) ("Bifurcation also presents the possibility of preservation of judicial (and party) resources, particularly if the jury finds certain claims to be not infringed or invalid, or finds that certain accused products do not infringe any valid claims."); *Eurand Inc. v. Mylan Pharm., Inc.*, No. 08-889-SLR, 2009 U.S. Dist. LEXIS 92542, at *5 (D. Del. Oct. 1, 2009) (granting bifurcation and noting "[w]ith respect to conserving judicial economy," claims to be resolved second "may be rendered moot by resolution of" claims to be resolved first); *Akzona, Inc. v. E. I. Du Pont de Nemours & Co.*, 607 F. Supp. 227, 232 (D. Del. 1984) ("Another important consideration in granting bifurcation is the extent to which determination of the issues in one case may eliminate the need for a trial on some or all of the issues in the second case."); *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 983 (D. Del. 1982) ("A preliminary finding on the question of liability may well make unnecessary the damages inquiry, and thus result in substantial saving of time of the Court and counsel and reduction of expense to the parties.") (quoting *Swofford v. B&W, Inc.*, 34 F.R.D. 15, 19-20 (S.D. Tex. 1963)).  It is thus appropriate to consider the efficiencies to be gained *if* ASC prevails; certainty of efficiencies is not required.

Second, Victaulic's argument is also wrong because bifurcation presents efficiencies in the resolution of the rest of the case even if ASC loses on the contract issues, as ASC explained in its opening brief (D.I. 259 at Part II).  Victaulic offers no substantive response to the significant impact *Roche Diagnostics Corp. v. Meso*

2

*Scale Diagnostics, LLC*, 30 F.4th 1109 (Fed. Cir. 2022), has on its claims, effectively conceding that its indirect-infringement case has collapsed. While it asserts that the license defense was not bifurcated for trial in *Roche* and that direct-infringement claims are not affected by *Roche* (D.I. 261 at 5), those responses miss the point.[1] Contrary to Victaulic's assertions—which lack any reference to the record (*id.* at 6)—it has no supportable damages theories based on direct infringement. Its expert opined *exclusively* on lost profits (Ex. I)—sales to third parties who use the accused products, i.e., indirect infringement. Victaulic's case would thus at best boil down to its direct-infringement claims based on the testing ASC does of the accused products to achieve certifications from Underwriters Laboratories and Factory Mutual Global, the only relief for which would be injunctive, decided by the Court.

In addition, while both parties certainly believe they will prevail on the contract issues, what makes ASC's position on bifurcation, unlike Victaulic's, principled and compelling is that if ASC prevails, there will be immense resources saved in trial and post-trial time. These benefits would also extend at a minimum to

---

[1] Discovery of the non-license issues in that case had actually been mostly stayed until after discovery of the license issues (*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 17-cv-189-LPS, D.I. 25 at 5-10), and it does not appear from the docket that any party actively sought bifurcation of the license issues (*id.* at D.I. 216 (*sua sponte* raising bifurcation generally), D.I. 217 at 80-81 (discussing bifurcation of willfulness and damages) ("Would contemplating bifurcation or phasing of some of the issues be something I [the court] should be thinking about here?")).

the two additional patents Victaulic initially asserted in this case, in the event that Victaulic appeals the Court's claim construction that effectively eliminated those patents from the case.  (D.I. 152).  On the other hand, while resolution of only one of ASC's defenses would resolve all of Victaulic's claims, the same is not true even if Victaulic were to prevail on *all* of its affirmative claims.  Contrary to its out-of-context quotation from the *Patent Case Management Judicial Guide* (D.I. 261 at 6), resolution of Victaulic's patent cause of action would not be dispositive of *any* of ASC's contract claims.  And if Victaulic prevails on the contract issues, the parties will at worst experience some slight redundancy in calling (employee or hired expert, in Victaulic's case) witnesses.  ASC is not complaining about that possibility, and Victaulic should not be complaining about it, particularly as the party invoking the judicial machinery.

## II.    The Purported Inefficiencies Victaulic Cites Are Illusory and of Victaulic's Own Making.

Contrary to Victaulic's arguments (D.I. 261 at 6-8), the issues and evidence in this case are easily separable as between the contract and patent issues.  Taking the testimony of the parties' technical experts on which Victaulic relies (*id.* at 6-7) as one example, analysis of the contract issues requires a determination of whether the accused products are protected by the language of the Settlement Agreement, whereas analysis of the infringement issues requires a determination of whether the accused products fall within the claims of the '796 Patent.  Further, any discussion

4

of infringement allegations in connection with resolution of the contract issues (if even needed, *see infra* Parts IV, V, & n.3) would be minimal and for context only (e.g., Victaulic claims infringement and why the Settlement Agreement matters), compared to the full-fledged, limitation-by-limitation analysis required for an infringement finding. Moreover, slight overlap in testimony or other evidence is insufficient to weigh against bifurcation. *See, e.g., Akzona*, 607 F. Supp. at 236 (granting bifurcation even though "there may be an overlap between the two [issues] in limited situations"); *Unwired Planet, LLC v. Google Inc.*, No. 3:12-cv-00504-MMD-VPC, 2014 U.S. Dist. LEXIS 173778, at *8 (D. Nev. Dec. 12, 2014) (noting, "In light of this [patent] case's complexity … this possibility of overlap does not outweigh the judicial resources that would be conserved if the damages and willfulness inquiries are narrowed through a separate liability trial.").

Victaulic's claim that a bench trial would create more work for the Court (D.I. 261 at 4-5) is also misplaced. Victaulic fails to appreciate that many tasks would remain the same (e.g., a written decision following a bench trial versus a written decision on post-verdict sufficiency-of-the-evidence grounds). Victaulic's one concrete example even arguably unique to a bench trial, written findings of fact, is not a foregone conclusion and is a document as to which courts frequently order submissions from the parties. Moreover, many of the undertakings attendant to a bench trial would be offset with a net gain due to jury-related tasks being rendered

unnecessary (e.g., rulings on motions *in limine* and certain other evidentiary objections, a charge conference on the contract issues, preparation of a verdict form).

Lastly, to the extent there are any inefficiencies, it is only because Victaulic refused to agree to a stay, *cf. Purdue Pharma L.P. v. Collegium NF, LLC*, No. 18-cv-226-CFC, D.I. 41 (D. Del. Dec. 10, 2018) (staying case where parties agreed that license-based defense represented "a threshold issue that should be determined early by the Court and without waste of the Court's or the parties' resources on unrelated aspects of the litigation"). ASC therefore should not be doubly (or "quadruply," to use Victaulic's narrative) prejudiced by Victaulic's about-face refusal to agree to a reasonable and common course of action. Bifurcation is the remaining next-best option to efficiently resolve this case.  In short, to the extent that there are any slight potential inefficiencies from ASC's proposal, they appropriately fall on the litigants themselves, rather than on the Court and jurors, and do not outweigh the countervailing potential for tremendous savings of trial and post-trial resources.

## III.   Victaulic Discounts the Benefits of Bifurcation on Judicial Resources.

Victaulic's cavalier comment that "[a] five-day trial 'is not sufficiently large as to raise serious concerns of expense and warrant bifurcation'" (D.I. 261 at 7 (quoting *Samuels v. Albert Einstein Med. Ctr.*, No. 97-cv-3448, 1998 U.S. Dist. LEXIS 17320 (E.D. Pa. Nov. 4, 1998)) is out of touch.  Its sound bite, from another court, *from 1998*, is not representative of this Court's docket.  As noted in the more

apt *Dutch Branch of Streamserve Development AB v. Exstream Software, LLC*, No. 08-cv-343-SLR, 2009 U.S. Dist. LEXIS 76006, at *2 (D. Del. Aug. 26, 2009), even over a decade ago:  "[T]he judges of this court have carried a substantial patent docket for the last decade. … Aside from the burden imposed on the court, the burden imposed on a jury in a patent trial is extraordinary."  Granting bifurcation, the court noted the existence of "scarce judicial resources" and "the burden of managing a substantial patent caseload."  *Id.* at *3.[2]  Victaulic should not be so quick to discount the time and resources of the Court and jury, the demands on which have only increased exponentially since those words were written.

## IV.    Victaulic's Claims of Prejudice and Jury Confusion Are Baseless.

Victaulic makes conclusory assertions of prejudice (D.I. 261 at 5) but does not articulate how it would be disadvantaged by bifurcation.  Victaulic's claim of jury confusion is similarly speculative.  There is no reason to believe that a jury would be confused as to why it would be resolving the contract issues first (even assuming *arguendo* that a jury would hear those issues, which ASC disputes, *see* Part V, *infra*).  In resolving ASC's license defense, a jury would have to answer the straightforward questions whether ASC's conduct is permitted under the Settlement

---

[2] The numerous other representative cases ASC cites from the District of Delaware and the Federal Circuit provide similar or additional compelling rationales in favor of bifurcation, and the distinctions Victaulic attempts to draw in terms of specific claims at issue (D.I. 261 at 9-10) do not weaken their applicability.

Agreement, and, if not, whether ASC had a good faith belief that its conduct was permitted under the Settlement Agreement.[3]  And there is no reason that the jury would not be able to view actual samples of the accused products, as Victaulic implies without explanation (D.I. 261 at 9), in connection with the contract issues. Finally, although Victaulic attempts to conflate the concepts under the umbrella of infringement (*id.* at 9), it is much easier for a jury to assess whether a particular use of a product was contractually permissible separate from whether a particular product falls within the scope of twenty-six patent claims.

## V.  Victaulic's Entrenched Position Is Unhelpful to Efficient and Orderly Trial of This Case.

ASC raised bifurcation because it is an efficient and sensible way to bring this dispute to a close, and the approach of trial presents an appropriate time to implement this procedure (*see, e.g.,* Fed. R. Civ. P. 16(c)(2)(M); 12/15/2021 Hearing Tr. at 49:14-15).  Despite Victaulic's complaints (D.I. 261 at 8), ASC's interest in efficient resolution of this case has been consistent even as Victaulic sought to expand the complexity of the case with additional patents.  ASC has offered concessions in a good-faith effort to streamline trial, which Victaulic largely ignored, other than to assume (*id.* at 4-5) that it has a right to a jury trial as to ASC's

---

[3] If appropriate, the jury could be instructed that Victaulic has accused ASC of infringement.  Trial of Victaulic's infringement claims is not required to convey this context to the jury.

licensing defenses, which is incorrect, *see, e.g., O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 281, 286 (Del. 2001) ("Under Delaware law, the interpretation of contractual language … is a question of law."); *Cordis Corp. v. Boston Sci. Corp.*, C.A. No. 10-39-SLR, 868 F. Supp. 2d 342, 352 (D. Del. June 19, 2012) ("If the court finds that a contract is ambiguous and that extrinsic evidence is undisputed, then the interpretation of the contract remains a question of law for the court to decide."),[4] and inconsistent with Victaulic's other positions in the case.[5] Victaulic's dug-in unwillingness to engage in any productive discourse on this issue is perhaps most apparent in its failure to concede, let alone even address, the sensibility of at least bifurcating willfulness and damages (should those issues survive procedurally and substantively) from the patent issues, as is common practice (D.I. 259 at Part V) and should be a minimum in resolving the instant motion.

---

[4] Victaulic's citation of *Ciena Corp. v. Corvis Corp.*, 352 F. Supp. 2d 526 (D. Del. 2005), strains credulity (D.I. 261 at 5), as that case involved waiver from a litigant's decision to not present a license issue "because of 'time constraints'" and had nothing to do with whether the issue was presented to a judge or jury. *Ciena*, 352 F. Supp. 2d at 528. Victaulic's arguments regarding the Court's past comments about a jury trial (D.I. 261 at 4-5) are similarly inapplicable. That discussion occurred in the context of the full case (e.g., a jury trial as to infringement and invalidity) without considering the instant proposal.

[5] Even before the contract issues crystallized in the case as they have now, Victaulic asserted well over a dozen times in its Answer to ASC's counterclaims that substantive allegations, including key allegations to be resolved at trial, supporting ASC's counterclaims were "legal conclusions that require no response." (*See, e.g.,* D.I. 75 ¶¶ 2, 16, 20, 23, 36-38, 41-42, 44-46, 52, 67, 85, 96, 100; *see also, e.g.,* 12/15/2021 Hearing Tr. at 27:12-14 (admitting that contract is unambiguous)).

## CONCLUSION

ASC respectfully requests that the Court enter an Order separating the contract issues from the patent issues for trial. Victaulic's knee-jerk reaction against bifurcation is not enough to outweigh the significant potential benefits of ASC's proposal. Separation of the contract and patent issues will ensure the orderly presentation of each party's case, avoid confusion, and allow appropriate management of the Court's, the jury's (should a jury even be necessary), and the parties' time and resources.

Dated: August 11, 2022

OF COUNSEL:

TAYLOR ENGLISH DUMA LLP
Todd E. Jones (*pro hac vice*)
Jeffrey R. Kuester (*pro hac vice*)
Coby S. Nixon (*pro hac vice*)
Seth K. Trimble (*pro hac vice*)
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
(770) 434-6868
tjones@taylorenglish.com
jkuester@taylorenglish.com
cnixon@taylorenglish.com
strimble@taylorenglish.com

Respectfully submitted,

MORRIS JAMES LLP

   */s/ Cortlan S. Hitch*
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
500 Delaware Ave., Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Defendant and
Counterclaim-Plaintiff ASC
Engineered Solutions, LLC*

10

## CERTIFICATE OF COMPLIANCE WITH
## STANDING ORDER REGARDING BRIEFING

Pursuant to the November 6, 2019, Standing Order Regarding Briefing in All

Cases, I certify that the font of this brief is Times New Roman, the type is 14-point,

and the total word count is 2,491 words as calculated by the word-processing system

used to prepare the filing.

Dated: August 11, 2022                    Respectfully submitted,

                                          MORRIS JAMES LLP

                                          */s/ Cortlan S. Hitch*
                                          Kenneth L. Dorsney (#3726)
                                          Cortlan S. Hitch (#6720)
                                          500 Delaware Ave., Suite 1500
                                          Wilmington, DE 19801-1494
                                          (302) 888-6800
                                          kdorsney@morrisjames.com
                                          chitch@morrisjames.com

                                          *Attorneys for Defendant and Counterclaim-
                                          Plaintiff ASC Engineered Solutions, LLC*