IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VICTAULIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-887 (CFC) (JLH) |
| | ) | |
| ASC ENGINEERED SOLUTIONS, LLC, | ) | PUBLIC VERSION |
| | ) | Confidential Version Filed: August 4, 2022 |
| Defendant. | ) | Public Version Filed: August 18, 2022 |
| ASC ENGINEERED SOLUTIONS, LLC, | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| VICTAULIC COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |
| | ) | |

**VICTAULIC'S ANSWERING BRIEF IN OPPOSITION TO ASC'S
<u>MOTION FOR BIFURCATION</u>**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...........................................................................................1

II.    NATURE AND STAGE OF THE PROCEEDINGS......................................2

III.    SUMMARY OF ARGUMENT.....................................................................2

IV.    ARGUMENT.................................................................................................2

    A.    Legal Standard..................................................................................2

    B.    Bifurcation Will Not Conserve Judicial Resources ..............................4

    C.    Bifurcation Will Not Enhance Juror Comprehension of the Issues......8

    D.    Bifurcation Would Not Lead to a More Just Final Disposition of the Litigation ..........................................................................................10

V.    CONCLUSION...........................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Ciena Corp. v. Corvis Corp.*,
210 F.R.D. 519 (D. Del. 2002) ........................................................3, 9

*Ciena Corp. v. Corvis Corp.*,
352 F. Supp. 2d 526 (D. Del. 2005)..................................................5

*Cornell Univ. v. Illumina, Inc.*,
C.A. No. 10-433-LPS-MPT, 2014 WL 12601516 (D. Del. Sept. 29,
2014) ................................................................................................10

*Cornell Univ. v. Illumina, Inc.*,
C.A. No. 10-433-LPS-MPT, D.I. 79 (D. Del. Oct. 11, 2011) ...........10

*Enzo Life Sciences, Inc. v. Digene Corp.*,
C.A. No. 02-212-JJF, 2003 WL 21402512 (D. Del. June 10, 2003)...................9

*Gardco Mfg., Inc. v. Herst Lighting Co.*,
820 F.2d 1209 (Fed. Cir. 1987) .............................................................9

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*,
62 F.3d 1512 (Fed. Cir. 1995) (*en banc*), *rev'd on other grounds*,
520 U.S. 17 (1997)................................................................................6

*Johns Hopkins Univ. v. Cellpro*,
160 F.R.D. 30 (D. Del. 1995) ..............................................................3

*Laboratory Skin Care, Inc. v. Limited Brands, Inc.*,
757 F. Supp. 2d 431 (D. Del. 2010)......................................................9

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
30 F.4th 1109 (Fed. Cir. 2022) ............................................................5

*Samuels v. Albert Einstein Med. Ctr.*,
C.A. No. 97-3448, 1998 WL 770624 (E.D. Pa. Nov. 5, 1998) .......................4, 7

*Shure Inc. v. ClearOne, Inc.*,
C.A. No. 19-1343-RGA, 2022 WL 1718950 (D. Del. May 27,
2022) ................................................................................................7

*WebXchange Inc. v. Dell Inc.*,
    C.A. No. 08-132-JJF, 2009 WL 5173485 (D. Del. Dec. 30, 2009)..................3, 4

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*,
    707 F. Supp. 1429 (D. Del. 1989)........................................................................3

**Other Authorities**

U.S. Patent No. 10,962,152........................................................................................8

**Rules and Statutes**

Fed. R. Civ. P. 42(b) ................................................................................................3

Federal Rule of Civil Procedure 42 ....................................................................2, 3

## I.     INTRODUCTION

ASC's motion to bifurcate is its fourth attempt to front-end its contract defenses ahead of Victaulic's patent infringement claims.  First, on the eve of the scheduling conference and in conjunction with the submission of the parties' proposed scheduling order, ASC sought to stay the case except for its contract defenses.  D.I. 30.  The Court denied ASC's request.  *See* 11/18/20 Oral Order.  Next, ASC filed a Motion to Stay Pending Anticipated Motion for Judgment on the Pleadings, which again sought to stay the case except for ASC's contract defenses.  D.I. 28, 29.  Following a hearing on June 15, 2021, the Court again denied ASC's request, but gave ASC "one shot" at an expedited determination of its contract defenses via fast-tracked discovery and an early summary judgment briefing schedule.  D.I. 78; *see also* 6/15/21 Tr. at 54:16 ("THE COURT: You get one shot if I did this.").  ASC took its shot, and after oral argument on ASC's motion, the Court denied it.  *See* 12/15/21 Tr. at 47:23-48:9.  In the seven months that followed, ASC never suggested or proposed that it would attempt for a fourth time to move its contract defenses to the front of the line.  Not until July 19, 2022 – two weeks prior to the deadline for Victaulic to provide the initial draft of pretrial papers to ASC – did ASC first disclose that it would move again to bifurcate trial so that it could advance its contract defenses before Victaulic is able to present its affirmative case.  Ex. A (7/19/22 email from C. Hitch to B. Egan).  But ASC's

"one shot" at adjudicating its contract defenses out of turn has already been taken, and it missed the mark. ASC's proposed bifurcation should be denied, and its contract defenses should be tried along with its other defenses *after* Victaulic presents its affirmative infringement case.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Victaulic largely agrees with ASC's description of the nature and stage of the proceedings in its opening brief. D.I. 259 at 4. Victaulic, however, again adds that this is ASC's fourth attempt to make this case solely about its license defenses, and that ASC's untimely and belated efforts are prejudicing Victaulic's ability to prepare its case for trial.

## III.    SUMMARY OF ARGUMENT

ASC argues that its license defenses should "now become the initial focal point at trial, separate from the complex patent issues in this case." D.I. 259 at 5. Contrary to ASC's contentions, bifurcating the license defenses and trying them first, separate from issues of infringement, invalidity, damages, and willfulness, would neither be a more efficient nor a fairer way to resolve this case. ASC's Motion should be denied.

## IV.    ARGUMENT

### A.    Legal Standard

Federal Rule of Civil Procedure 42 provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial

of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The Advisory Committee Notes for Rule 42 state that while bifurcation should "be encouraged where experience has demonstrated its worth," "separation of issues for trial is not to be routinely ordered." Fed. R. Civ. P. 42 Advisory Committee Notes; *see also Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30, 32-33 (D. Del. 1995) ("In the normal course of litigation, all claims and issues in a civil action are presented for resolution in one trial.").

"Courts, when exercising their broad discretion to bifurcate issues for trial under Rule 42(b), should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *WebXchange Inc. v. Dell Inc.*, C.A. No. 08-132-JJF, 2009 WL 5173485, at *2 (D. Del. Dec. 30, 2009) (quoting *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 520-21 (D. Del. 2002)). "In deciding whether one trial or separate trials will best serve the above factors the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *Id.* "Even if bifurcation promotes judicial economy, the Court may decline to order separate trials if it would result in unnecessary delay, additional expense, or some other form of prejudice." *Id.* (citing *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989)). "A party moving for

bifurcation has the burden of establishing that it is appropriate." *Id.* (citation omitted).

### B. Bifurcation Will Not Conserve Judicial Resources

ASC's arguments that bifurcation of its license defenses will conserve resources here are based entirely (and erroneously) on the premise that ASC will succeed.  As other courts in this Circuit have recognized, the court "cannot accept this premise, however, as that would require it to assume the very thing that Defendant must prove." *Samuels v. Albert Einstein Med. Ctr.*, C.A. No. 97-3448, 1998 WL 770624, at *2 (E.D. Pa. Nov. 5, 1998).  Moreover, the Court has already addressed ASC's "one shot" at early adjudication of its license defenses via its early motion for summary judgment, and the Court denied the motion, recognizing that there are factual issues that must be resolved by the jury.  *See* 12/15/21 Tr. at 47:24-49:16 (citing material factual disputes listed in paragraphs 31-48 of D.I. 128, including whether ASC's SLT Products are "Anvil Products" under the parties' 2016 settlement agreement in view of the differing structure, function, appearance, and/or method of assembly).

Moreover, ASC has now proposed a separate bench trial of its contract defenses.  D.I. 259 at 18.  Placing the Court in the position of having to try a second case and provide a written decision with findings of fact does not conserve judicial resources.  Further, while ASC may be willing to waive its right to a jury,

Victaulic is not, and this Court has indicated that it expects the jury to be the fact finder here.  *See* 12/15/21 Tr. at 52:5-8 ("[A]t the end of the day you get a jury trial and you are going to have a fair trial and I'm going to give you the time to try it."); *see also Ciena Corp. v. Corvis Corp.*, 352 F. Supp. 2d 526, 529 (D. Del. 2005) (holding defendant waived its license defense by not presenting it to the jury). Rather than seeking judicial efficiency, it is more likely ASC seeks to avoid having to argue to the jury the contradictory positions inherent in arguing the accused products are covered by a license involving the '796 patent but that they do not infringe the '796 patent.

ASC next argues that even if it does not prevail on the contract issues, there might be resolution of some of Victaulic's indirect infringement allegations if the jury were to find that ASC had a good-faith belief that it was not infringing the '796 patent.  D.I. 259 at 13.  First, it would be prejudicial to Victaulic to permit the jury to address such a question before and without permitting Victaulic to present its infringement case.  Second, there is no benefit to having the jury resolve such a question in a separate trial, and the license defense was not bifurcated in the case relied upon by ASC.  *See* D.I. 259 at 13-14 (citing *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109 (Fed. Cir. 2022)).  Indeed, the jury would likely be confused as to why it is even addressing such a question in the absence of allegations of infringement.  And if the allegations of infringement must

be put to the jury for context in the first trial, and then again in the second trial, it illustrates why having two trials would be duplicative and inefficient.  *See also* Menell, P., et al., *Patent Case Management Judicial Guide* (3d ed. 2016), at 8-8 ("Nonpatent causes of action based on contract and trade-secret law are sometimes less amenable to bifurcation.  When patents are the subject of a licensing agreement or some other contract, resolution of the patent cause of action is often dispositive or at least relevant to the contract cause of action.").

ASC also argues that a finding that ASC's license defense was made in good faith would negate Victaulic's *entire* damages claim by negating the intent requirement of indirect infringement. D.I. 259 at 10. But Victaulic's damages claim is also based on ASC's direct infringement, which is a "strict liability offense." *Hilton Davis Chem. Co. v. Warner-Jenkinson Co*., 62 F.3d 1512, 1527 (Fed. Cir. 1995) (*en banc*), *rev'd on other grounds*, 520 U.S. 17 (1997). Victaulic's damages claim would have to be tried to the jury even if ASC had a good faith (but mistaken) licensing defense, so bifurcation would be inefficient.

Yet another reason why separate trials on the license defense and the infringement issues would be inefficient is that both parties have experts that have opined on both issues, and these experts would have to testify on direct, cross, and redirect twice.  Victaulic's expert Dr. Lee Swanger has opined on whether the accused SLT Products are "Anvil Products" under the settlement agreement and

describes in detail the differences between the accused SLT Products and the "Anvil Products."  Ex. B (excerpts from Expert Report of Dr. Lee A. Swanger, Ph.D., P.E.).  This analysis of the SLT Products will have substantial overlap with his testimony on infringement by the SLT Products.  ASC's expert Dr. Kimberly Cameron has likewise opined at length on whether the accused SLT Products are "Anvil Products" under the settlement agreement.  Ex. C (excerpts of Rebuttal Expert Report of Kimberly Cameron, Ph.D.).  Indeed, Dr. Cameron's analysis of the settlement agreement explicitly draws comparisons to Victaulic's infringement contentions.  *Id.* at ¶ 80.

The trial is currently scheduled for five days.  D.I. 31.  A five-day trial "is not sufficiently large as to raise serious concerns of expense and warrant bifurcation."  *Samuels*, 1998 WL 770624, at *2.  The limited time will necessarily require the parties to narrow their respective cases to their best arguments.  Victaulic will certainly narrow the number of asserted claims, and ASC's invalidity case will likewise be narrowed.  *See Shure Inc. v. ClearOne, Inc.*, C.A. No. 19-1343-RGA, 2022 WL 1718950, at *1 (D. Del. May 27, 2022) ("In the normal course of litigation, parties narrow claims and defenses as trial approaches.").  Moreover, although ASC refers to "four key" prior art references and "various combinations for obviousness, with numerous subsidiary factual and scientific issues, involved," D.I. 259 at 15-16, such arguments are subject to

estoppel resulting from the reexamination proceeding ASC brought against the '796 Patent as set forth in Victaulic's pending Motions for Summary Judgment #1 (D.I. 193) and #3 (D.I. 201).  ASC will be free to focus its trial time on its contract defenses if it deems them to be the strongest arguments for non-infringement.

ASC also argues that resolution of the contract issues "extend beyond the '796 Patent" because of ongoing discussions between the parties relating to patents not asserted in this case.  D.I. 259 at 14.  Setting aside that speculative "effect and efficiencies even beyond this litigation" is not a consideration courts address in deciding whether to bifurcate a trial, any such clarity would be equally obtained by having the jury address the contract defense at the same time as the infringement issues.  Moreover, it is ironic that ASC now seeks clarity with respect to, e.g., Victaulic's U.S. Patent No. 10,962,152; ASC previously rejected Victaulic's attempt to add the '152 Patent to this litigation and argued that doing so would result in "undue prejudice and inequities to [ASC]."  Ex. D (4/14/21 email from C. Nixon to C. Stretch).  ASC cannot have it both ways.

## C.     Bifurcation Will Not Enhance Juror Comprehension of the Issues

ASC insinuates that the contract issues are simple in comparison to the "far more complicated" patent issues.  D.I. 259 at 15.  But Victaulic's infringement case is not overly complex, and again, there is overlap in the technical details relevant to the patent and contract issues.  The technology here is directed to pipe

couplings, and the jury will have the benefit of detailed drawings and actual samples of the accused products.  ASC attempts to show the patent case is overly complicated by making generic references to patent law concepts that the jury must decide, and that there will be several experts helping the jury make those decisions. If this were enough to justify bifurcating a license defense, then such a defense would always be bifurcated in patent cases.  But ASC has not cited any authority that suggests bifurcation is the norm.  The cases that ASC cites support the proposition that courts often bifurcate liability and damages or equitable issues. They do not support the proposition that the question of infringement (i.e., whether the accused products are unauthorized sales of products covered by the asserted claims) should be bifurcated into two separate trials, or that a contract defense should be presented *before* the plaintiff presents its infringement case.  *See, e.g.*, *Ciena*, 210 F.R.D. at 521 (ordering separate trials directed to infringement and willfulness; invalidity; and damages); *Enzo Life Sciences, Inc. v. Digene Corp.*, C.A. No. 02-212-JJF, 2003 WL 21402512, at *5 (D. Del. June 10, 2003) (ordering separate trials directed to infringement; validity; and business tort claims); *Laboratory Skin Care, Inc. v. Limited Brands, Inc.*, 757 F. Supp. 2d 431, 442 (D. Del. 2010) (granting motion to bifurcate liability issues from damages and willfulness issues); *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212-16 (Fed. Cir. 1987) (recognizing narrow discretion to allow equitable claim to be

tried first, and holding that it was not an abuse of discretion to try inequitable conduct without a jury before addressing infringement).  In the one case from this district cited by ASC where a covenant-not-to-sue defense was bifurcated, *Cornell Univ. v. Illumina, Inc.*, C.A. No. 10-433-LPS-MPT, D.I. 79 (D. Del. Oct. 11, 2011), the bifurcation occurred early in the case and all other aspects of the case were stayed (*Cornell Univ. v. Illumina, Inc.*, C.A. No. 10-433-LPS-MPT, D.I. 87 (D. Del. Nov. 3, 2011)).  Moreover, the Court ultimately found that the patents-in-suit were not subject to the covenant not to sue and therefore bifurcation did not end up disposing of the case.  *Cornell Univ. v. Illumina, Inc.*, C.A. No. 10-433-LPS-MPT, 2014 WL 12601516, at *4-*5 (D. Del. Sept. 29, 2014).

### D.  Bifurcation Would Not Lead to a More Just Final Disposition of the Litigation

ASC argues that bifurcation of the contract issues will allow for a more just final disposition of the litigation because of the "efficiencies and advantages" addressed above, and because it will "avoid further prejudice to ASC" based on its understanding of the settlement agreement.  Again, such an argument depends on ASC being correct, which the Court has already determined that it cannot decide. Moreover, presumably any bifurcation would still require all issues be tried in a total of five days to the same jury, and thus any delay in resolution of the contract claims by the jury would be a matter of days if all issues are tried together.

ASC also argues that bifurcation avoids "clouding the jury's judgment on the contract issues…through any conclusions on infringement liability."  D.I. 259 at 17-18.  To the contrary, it is more just to provide the jury with the full context of the dispute they are deciding in determining whether the accused products infringe but are nevertheless authorized by the settlement agreement.

ASC has also cited to a pre-litigation statement by Victaulic's counsel in the context of settlement discussions stating that the parties may be able to work out resolving the licensing issue earlier in the case.  D.I. 259 at 9 (citing D.I. 50 at 18). As already discussed, a separate schedule leading up to an early summary judgment motion and hearing on the contract issues was already entered, and that motion was denied.  ASC had its "one shot" at an early determination of the license issue.  It should now prepare to present its defense to the jury in response to, and in the context of, Victaulic's allegations of infringement.

## V.    CONCLUSION

For the reasons set forth above ASC's motion to bifurcate should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____

OF COUNSEL:

Kenneth E. Keller
Colin T. Kemp
Christopher E. Stretch
Alekzandir Morton
PILLSBURY WINTHROP SHAW
    PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111
(415) 983-1084

Bryan P. Collins
Benjamin L. Kiersz
PILLSBURY WINTHROP SHAW
    PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA  22102-4856
(703) 770-7900

August 4, 2022

Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Victaulic
Company*

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 2,668 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing brief. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Anthony D. Raucci*

Anthony D. Raucci (#5948)

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 4, 2022, upon the following in the manner indicated:

Kenneth L. Dorsney, Esquire                    *VIA ELECTRONIC MAIL*
Cortlan S. Hitch, Esquire
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
*Attorneys for Defendant*

Todd E. Jones, Esquire                         *VIA ELECTRONIC MAIL*
Jeffrey R. Kuester, Esquire
Coby S. Nixon, Esquire
Seth K. Trimble, Esquire
Kelly Mullally, Esquire
Cory M. Mull, Esquire
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
*Attorneys for Defendant*

*/s/ Anthony D. Raucci*
_____
Anthony D. Raucci (#5948)