IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| VICTAULIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ASC ENGINEERED SOLUTIONS, LLC,<br><br>Defendant. | Civil Action No. 20-887-GBW |

## **MEMORANDUM ORDER**

Defendant ASC Engineered Solutions ("ASC") filed a Motion for Bifurcation of this action pursuant to Federal Rule of Civil Procedure 42(b) ("ASC's Motion," D.I. 258) and argues that bifurcation will best make use of the parties' and the Court's limited resources. D.I. 259 at 2. Defendant Victaulic Company ("Victaulic") opposes bifurcation on efficiency and fairness grounds. D.I. 261 at 2. The Court has reviewed the parties' briefing (D.I. 259; D.I. 261; D.I. 262), and heard oral argument on September 28, 2022, as ASC requested (D.I. 265). The Court finds that bifurcation of this trial into two separate jury trials will neither conserve judicial resources nor simplify the issues. Thus, the Court denies ASC's Motion.

Also, the Court must determine in advance of trial whether the provision defining "Anvil Products" in the Settlement Agreement is ambiguous. The Court requested additional briefing on this issue in advance of oral argument (D.I. 278 at 3), and the parties' briefing (*see* D.I. 279 at 2; D.I. 280 § II) and oral argument addressed whether the definition is ambiguous. For the reasons explained below, the Court finds that the definition of "Anvil Products" is ambiguous. Therefore, a jury must hear extrinsic evidence to determine its meaning.

## I. BACKGROUND

Victaulic alleges that ASC's "pre-assembled SLT products with captured couplings" (the "Accused Products") infringe various claims of United States Patent No. 7,712,796 (the "'796 patent").[1] D.I. 1 ¶ 1. The Accused Products include ASC's SlideLOK 74FP couplings attached to another component, such as a hose, an end cap, or a pipe. *See* D.I. 1 ¶¶ 33–36; D.I. 1-1, Ex. 4 at 2. ASC alleges that the parties' Settlement and License Agreement, Release, and Covenant Not to Sue—with an effective date of October 12, 2016—(the "Settlement Agreement," D.I. 22, Ex. A) grants ASC a license "to sell the Accused Products without interference from Victaulic."[2] D.I. 22 at 23.

The Settlement Agreement grants ASC a license to sell "any Anvil Product" worldwide. D.I. 22, Ex. A §§ 1, 2.6. As part of the Settlement Agreement, Victaulic also agreed not to sue ASC "in connection with the manufacture, use, offer to sell, sale, importation or other disposition of any Anvil Product [worldwide] . . . during" the life of, among others, the '796 patent. *Id.* §§ 1, 2.5, 9.1. The Settlement Agreement defines "Anvil Product" as follows:

> Anvil International's SlideLOK couplings of all current (and future sizes which are scaled versions of current sizes) as listed in and illustrated by the drawings in Schedule A . . . (the "Listed Couplings"), including variations thereof, such variations including, updates or improvements thereto and future versions or revisions thereof . . . ; provided that such variations do not: (a) result in a coupling that is more than colorably different from the Listed Couplings relative to Victaulic's patented structural features, appearance, functionality, or method of assembly; or (b) result in a coupling that is the same as, or only colorably different from, the Current Victaulic Couplings relative to Victaulic's patented structural features, appearance, functionality, or method of assembly.

*Id.* § 1.

---

[1] The '796 patent is the only remaining patent at issue in this action. D.I. 259 at 1

[2] ASC's name prior to April 5, 2021 was "Anvil International, LLC" (D.I. 79), so the Settlement Agreement, the Complaint (D.I. 1), and the Amended Answer to the Complaint (D.I. 22), refer to ASC as "Anvil."

2

ASC's Motion seeks trial of several of ASC's defenses related to the Settlement Agreement before the parties try patent infringement, invalidity, and damages to a jury. D.I. 259 at 4. Additionally, the Court had not previously provided a final interpretation of "Anvil Product." *See* D.I. 278 at 2.

## II.  LEGAL STANDARD

### A.  Bifurcation

Federal Rule of Civil Procedure 42(b) permits the Court to order a separate trial of one or more separate issues "[f]or convenience, to avoid prejudice, or to expedite and economize . . . ." If a party moves for bifurcation, it has the burden to establish that bifurcation "is appropriate." *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 567 (D. Del. 2013) (citations omitted). Under Rule 42(b), "[t]he district court is given broad discretion in reaching its decision whether to separate the issues . . . ." *Idzojtic v. Pennsylvania R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972); *see Barr Lab'ys, Inc. v. Abbott Lab'ys*, 978 F.2d 98, 115 (3d Cir. 1992) (citing *Idzojtic*, 456 F.3d at 1230). "When exercising [their] broad discretion, courts should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *Evertz Microsystems Ltd. v. Lawo Inc.*, 2021 WL 706457, at *1 (D. Del. Feb. 23, 2021) (internal quotation marks and citation omitted); *see* 9A Arthur R. Miller & Charles Allan Wright, Federal Practice and Procedure § 2388 (3d ed. 2022) ("[U]ltimately the question of whether to conduct separate trials under Rule 42(b) should be, and is, a matter left to the sound discretion of the trial court on the basis of the circumstances of the litigation before it.").

### B.  Contract Interpretation

The Settlement Agreement selects Delaware law. *See* D.I. 22, Ex. A § 11.5. Thus, "[t]he determination of ambiguity lies within the sole province of the court." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010). The Delaware Supreme Court has explained that:

3

> When interpreting a contract, Delaware courts read the agreement as a whole and enforce the plain meaning of clear and unambiguous language. Contracts will be interpreted to give each provision and term effect and not render any terms meaningless or illusory. When a contract is clear and unambiguous, the court will give effect to the plain meaning of the contract's terms and provisions. Language is ambiguous if it is susceptible to more than one reasonable interpretation. An interpretation is unreasonable if it produces an absurd result or a result that no reasonable person would have accepted when entering the contract. The parties' steadfast disagreement over interpretation will not, alone, render the contract ambiguous.

*Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) (internal quotation marks, citations, and footnotes omitted). The "objective" of the court in contract interpretation is to "determin[e] the intent of the parties from the language of the contract." *Cox Commc'ns, Inc. v. T-Mobile US, Inc.*, 273 A.3d 752, 760 (Del. 2022).

## III. DISCUSSION

As explained in more detail below, the Court declines to exercise its discretion to bifurcate the trial and finds that the definition of "Anvil Product" in the Settlement Agreement is ambiguous. Thus, during trial, the jury must hear extrinsic evidence to construe the meaning of the definition of "Anvil Product" in the Settlement Agreement.

### A. Bifurcation

ASC has failed to meet its burden to demonstrate that bifurcation will conserve judicial resources or simplify the case. First, bifurcation would fail to conserve judicial resources because it would do little, if anything, to shorten trial. ASC argues that resolution of its contract claims "may eliminate the need for a more technically involved and expensive jury trial on infringement, invalidity, and damages" and that a finding that ASC "had a good faith belief that its conduct at issue was authorized" would eliminate willfulness and certain damages claims. D.I. 259 at 2. Both parties understood that the Court's predecessor had allocated five days for the combined trial. *See* D.I. 31 ¶ 28. However, during oral argument, Victaulic asserted that a trial of all contract claims

4

would take four days and that a trial of the patent claims, assuming Victaulic prevailed on the contract claims, would take another five days. *See* Tr. of Sept. 28, 2022 Hr'g at 36.[3] ASC responded that trial of the contract issues would take a maximum of three days, though trial time could vary depending on the need to consider extrinsic evidence and whether ASC attains a favorable ruling on its pending Motion to Exclude Certain Expert Opinions (D.I. 212) related to "secondary considerations" (*see* D.I. 213 at 21). Tr. of Sept. 28, 2022 at 42-43.

The crux of ASC's position is that a two-day reduction in trial now could possibly obviate the need for a five-day trial a few months later. But this is far from demonstrating that bifurcation would conserve judicial resources. Indeed, after hearing oral argument, the Court reasonably anticipates that both parties would proffer lengthy explanations of the underlying technology to each jury in a bifurcated trial—especially in light of both ASC and Victaulic using a large portion of oral argument to explain the underlying technology to the Court. *See, e.g.*, Tr. of Sept. 28, 2022 at 4-9, 20-27. Since the parties' requested trial lengths and product explanations suggest substantial overlap between the contract and patent issues, bifurcation is unlikely to conserve judicial resources.

Second, bifurcation would fail to simplify the case for the jury. ASC asserts that the contract issues are simpler than the patent issues, so separation "would thus enhance juror comprehension . . . ." D.I. 259 at 13-14. However, as Victaulic explained during oral argument, bifurcation would not reduce the number of fact or expert witnesses it would need to call at either stage of trial. Rather, nearly all of Victaulic's fact witnesses and its primary expert witness testifying at the first trial would be called—and would provide overlapping testimony—at the second jury trial. *See* Tr. of Sept. 28, 2022 at 35. Surprisingly, ASC did not dispute Victaulic's

---

[3] Note that all citations to the September 28, 2022 hearing transcript are to the rough transcript.

position about the need for many overlapping fact and expert witnesses and did not commit to any substantial reduction in witnesses or documentary evidence itself if the Court granted bifurcation. *See* Tr. of Sept. 28, 2022 at 42 ("disagree[ing]" with the "scope of overlap" only as to allegations of copying and the "origins of the [Accused] [P]roducts"). Moreover, bifurcation may not obviate the need to discuss the '796 patent while trying ASC's contract claims. In fact, because the definition of "Anvil Product" references "Victaulic's patented structural features," and the '796 patent is defined as a "Victaulic U.S. Patent" in the Settlement Agreement (D.I. 22, Ex. A § 1), Victaulic insists that it will need to discuss the '796 patent during trial of ASC's contract claims. *See* Tr. of Sept. 28, 2022 at 20. Thus, ASC has failed to show that a separate trial would simplify issues for the jury.

Third, bifurcation would require the Court to resolve numerous outstanding motions on an accelerated schedule. During oral argument, the parties agreed that the Court would need to resolve ASC's Motion to Exclude Certain Expert Opinions (D.I. 212) and ASC's Motion *in Limine* No. 1 to Preclude Victaulic from Presenting Argument or Evidence that ASC's SlideLOK Couplings Infringed Victaulic's Patents or Resulted from Copying Victaulic's Products or Patents (D.I. 269-2, ASC's Motion *in Limine* #1) prior to trial on the contract claims alone. *See* Tr. of Sept. 28 at 34, 40-41 (Victaulic's counsel asserting it wished to present evidence of copying to the jury in a contract trial). The parties also would need to engage in substantially more work to prepare witnesses, create trial strategies, organize and produce documents, and undertake the innumerable tasks necessary to prepare for a well-run trial. The Court does not see fit to impose the accelerated burden upon the parties (or upon itself) without a meaningful opportunity to save judicial resources or simplify jury issues. Again, the parties both demonstrated that the Court's savings here would be limited, at best.

Fourth, ASC cannot show that it suffers prejudice that bifurcation would alleviate. ASC contends that one trial of all of the issues in dispute could prejudice ASC if the patent issues "cloud[] the jury's judgment on the contract issues . . . ." D.I. 259 at 14. Victaulic responds that "it is more just to provide the jury with the full context of the dispute they are deciding . . . ." D.I. 261 at 11. The Court finds neither argument compelling. Courts regularly ask juries to set aside their biases and resolve thorny factual questions.[4] Contrary to ASC's speculation, if necessary, jurors are capable of setting aside whether ASC infringed the '796 patent when considering ASC's contract claims. ASC also argues that Victaulic's lawsuit prejudices ASC because it "has undermined the very purpose of the Settlement Agreement to ASC." D.I. 259 at 14. However, whether the scope of the Settlement Agreement covers the Accused Products lies at the heart of this case, and the Court will not prejudge the issue. Ultimately, ASC has failed to show that bifurcation would meaningfully alleviate any potential prejudice caused by one full trial of all the disputed issues.

In summary, the Court finds that a bifurcated trial would not conserve judicial resources or simplify the issues for a jury. Therefore, the Court denies ASC's motion.

**B.   Contract Ambiguity**

The Court finds that the definition of "Anvil Products" in the Settlement Agreement is ambiguous. Thus, the jury will need to hear and consider extrinsic evidence when interpreting the meaning of that provision of the Settlement Agreement.

---

[4] *See* Comm. on Civil Jury Instructions Within the Third Circuit, *General Instructions for Civil Cases*, at 38, *in* Model Civil Jury Instructions (Aug. 2020), https://www.ca3.uscourts.gov/sites/ca3/files/chapters%201_2_3_%20for%20posting%20after%20August%202020%20meeting.pdf ("Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.").

ASC asserts that the definition of "Anvil Product" is unambiguous because the Settlement Agreement covers those couplings listed in Schedule A to the Settlement Agreement, and both parties concede that the SlideLOK 74 FP coupling standing alone is included in the Accused Products listed on Schedule A. *See* Tr. of Sept. 28 at 6-7, 38. Victaulic, however, argues "that there may be more than one interpretation of 'Anvil Products,' rendering the provision ambiguous." D.I. 280 § II. Chief Judge Connolly, who handled this case before it was reassigned to this Judge, previously noted that, while both parties were arguing that the contract was unambiguous, the Court "could say" that Victaulic and ASC "didn't have a meeting of the minds" and "had different understandings of what they were actually resolving with the [S]ettlement [A]greement." Tr. of Dec. 17, 2021 Hr'g at 48:21–49:4. Chief Judge Connolly concluded that "the dispute cries out for a factual resolution and a fact-finder to do that." *Id.* at 49:4–6.

Similarly, this Court concludes that the term "Anvil Product" in the Settlement Agreement is ambiguous. When the Settlement Agreement is read "as a whole," the Court finds that the contract is "is susceptible to more than one reasonable interpretation." *Manti Holdings*, 261 A.3d at 1208. For example, "Anvil Product" could be reasonably interpreted as:

> (1) a coupling listed on Schedule A, regardless of whether it is attached to another component. Such an interpretation would be consistent with the "Anvil Products" definition's focus on "couplings," alone. *See* D.I. 22, Ex. A § 1; or
>
> (2) a product which, when considered in its entirety including any additional components, appears on Schedule A. Indeed, the remainder of the "Anvil Products" definition evaluates whether a coupling is an "Anvil Product" based on the "structural features, appearance, functionality, [and] method of assembly" of the coupling. D.I. 22, Ex. A § 1. The addition of components, i.e., a fire hose, other fittings, or an end cap, may be considered a "variation" and/or may alter the coupling on each dimension.

ASC is correct that an "Anvil Product" includes "SlideLOK couplings . . . as listed in . . . Schedule A . . . ." D.I. 22, Ex. A § 1. However, ASC's Accused Products are not stand-alone

couplings but include various components, i.e. a fire hose, other fittings, or an end cap, that may be considered variations or otherwise take the Accused Products outside the definition of "Anvil Product." *See* D.I. 1 ¶¶ 33–36; D.I. 1-1, Ex. 4 at 2.

In short, the plain language of the Settlement Agreement does not reveal how the parties intended to handle products that include more than just a coupling. *See Cox Commc'ns*, 273 A.3d at 760. Once the Court determines that a contract is ambiguous, "the factfinder may then 'consider admissible extrinsic evidence' to resolve" the parties' intended meaning of the ambiguous terms. *L.P.P.R., Inc. v. Keller Crescent Corp.*, 532 F. App'x. 268, 274 (3d Cir. 2013) (quoting *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012)). Here, the appropriate factfinder is a jury. *Id.*

## IV. CONCLUSION

For all the foregoing reasons, the Court declines to exercise its discretion to bifurcate the trial and finds that the definition of "Anvil Product" in the Settlement Agreement is ambiguous.

WHEREFORE, at Wilmington this 3rd day of October, 2022, **IT IS HEREBY ORDERED** as follows:

1. ASC's Motion for Bifurcation (D.I. 258) is **DENIED**;

2. The jury trial in this case is rescheduled for January 16–20, 2023, and the pretrial conference is rescheduled to January 10, 2023, at 3:00 pm;

3. The parties shall submit a revised pretrial order, jury instructions, *voir dire*, and special verdict forms, if any, no later than December 13, 2022, and all such documents shall otherwise be consistent with this case's Scheduling Order (*see* D.I. 31 ¶¶ 24–25, 27); and

4. The Motions *in Limine* attached to the parties' Proposed Pretrial Order (D.I. 269) are **DENIED** as moot.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE