IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

VICTAULIC COMPANY,

                    Plaintiff,

          v.                                    C.A. No. 20-887-GBW

ASC ENGINEERED SOLUTIONS, LLC,

                    Defendant.

---

Brian P. Egan, Andrew Mark Moshos, Anthony David Raucci, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Alekzandir Morton, Benjamin L. Kiersz, Bryan P. Collins, Christopher E. Stretch, Colin T. Kemp, Surui Qu, Kenneth E. Keller, PILLSBURY WINTHROP SHAW PITTMAN LLP, San Francisco, California

          *Counsel for Plaintiff*

Kenneth L. Dorsney, Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, Delaware; Coby S. Nixon, Jeffrey R. Kuester, Seth K. Trimble, Todd E. Jones, Kelly C. Mullally, Cory M. Mull, TAYLOR ENGLISH DUMA LLP, Atlanta, Georgia

          *Counsel for Defendant*

**MEMORANDUM OPINION**

November 28, 2022
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiff Victaulic Company ("Victaulic") filed this action against Defendant ASC Engineered Solutions, LLC ("ASC"),[1] alleging that ASC infringed United States Patent No. 7,712,796 ("the '796 patent") and two patents no longer at issue. D.I. 1 ¶ 1; D.I. 152. Pending before the Court is ASC's Motion to Exclude Certain Expert Opinions (D.I. 212, the "Motion"). The Court has reviewed the parties' briefing, *see* D.I. 213; D.I. 235; D.I. 249, and oral argument is not necessary, D.I. 251 (requesting oral argument). For the reasons explained below, the Court grants-in-part and denies-in-part the Motion.

## I.   BACKGROUND

### A.   Stage of the Proceedings

The Court presumes familiarity with the case and includes only the background relevant to the Motion. On June 30, 2020, Victaulic alleged that ASC's "pre-assembled SLT products with captured couplings" (the "Accused Products") infringed various claims of the '796 patent and United States Patent Nos. 10,458,579 and 10,627,025 (the "Complaint"). D.I. 1 ¶ 1. On October 18, 2021, the Court issued an order that, as applicable to the '796 patent, construed three terms and announced one agreed-upon construction. D.I. 124. Following claim construction, the parties asked that the Court enter a stipulated partial judgment of noninfringement as to the other two patents-in-suit, D.I. 150, and the Court did so on November 22, 2021, D.I. 152.

On June 15, 2021, the Court denied two motions by Victaulic to dismiss ASC's breach of contract and inequitable conduct counterclaims and permitted ASC to file an early summary judgment motion as to its license to manufacture and distribute the Accused Products. *See* C.A.

---

[1] ASC was previously known as Anvil International, LLC. D.I. 79.

Docket No. 20-788-GBW at ORAL ORDER of June 17, 2021; D.I. 111 at 2. ASC filed its early

summary judgment motion on October 1, 2021, D.I. 110, and the Court denied that motion in an

oral ruling on December 17, 2021, *see* Tr. of Hr'g of Dec. 17, 2021, at 47:25–48:19. After "the

submission of the parties' pretrial order and proposed jury instructions, this case was reassigned

to Judge Gregory Williams on September 7, 2022." D.I. 278 at 2 (citations omitted). On

October 3, 2022, the Court denied ASC's Motion for Bifurcation, D.I. 258, and scheduled trial to

begin on January 17, 2023, D.I. 282; D.I. 284. Fact discovery is closed and expert reports and

depositions are complete. *See* D.I. 235 at 3.

### B.     Background as to the Motion

ASC seeks to exclude the testimony of Victualic's experts, Mr. Steven Boyles ("Boyles")

and Dr. Lee Swanger ("Swanger"), as to potential noninfringing substitutes, convoyed sales, and

secondary considerations. D.I. 212 at 4–5. ASC asks the Court to order that

> Mr. Boyles may not offer the opinions set forth in paragraphs 60–72 of his Updated
> Opening Report and in paragraphs 11–15 of his Reply Report (second *Panduit*
> factor); Dr. Swanger may not offer the opinions set forth in paragraphs 147–150 of
> his Infringement Reply Report (second *Panduit* factor); Mr. Boyles may not offer
> the opinions set forth in paragraphs 94–105 of his Updated Opening Report and in
> paragraphs 56–71 of his Reply Report (convoyed sales); Dr. Swanger may not offer
> the opinions set forth in paragraph 151 of his Infringement Reply Report (convoyed
> sales); and Dr. Swanger may not offer the opinions set forth in paragraphs 381–398
> of his Invalidity Rebuttal Report (secondary considerations).

*Id.* The Court thanks ASC for its identification of the specific potential testimony at issue.

The Accused Products include both couplings and attachments, such as hoses, in a

preassembled product. *See* D.I. 214, Ex. A ¶ 45; D.I. 1 ¶ 32. Victaulic's patented products

include the AH1-CC and AH2-CC, "both of which are braided hose products containing captured

[i.e., pre-attached] couplings[,]" and which compete with the Accused Products. D.I. 214, Ex. A

¶¶ 45, 97.

2

## II.    LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the

Supreme Court held that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial]

judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is

relevant to the task at hand."  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if: (a) the expert's
> scientific, technical, or other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the testimony is based
> on sufficient facts or data; (c) the testimony is the product of reliable principles and
> methods; and (d) the expert has reliably applied the principles and methods to the
> facts of the case.

Fed. R. Evid. 702.  As the Third Circuit has explained,

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification,
> reliability and fit.  Qualification refers to the requirement that the witness possess
> specialized expertise.  We have . . . [held] that a broad range of knowledge, skills,
> and training qualify an expert.  Secondly, the testimony must be reliable; it must be
> based on the methods and procedures of science rather than on subjective belief or
> unsupported speculation; the expert must have good grounds for his o[r] her belief.
> In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence
> under Rule 702 requires a determination as to its scientific validity.  Finally, Rule
> 702 requires that the expert testimony . . . must be relevant for the purposes of the
> case and must assist the trier of fact.

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003) (cleaned up);

*Kuhar v. Petzl Co.*, 2022 WL 1101580, at *7 (3d Cir. Apr. 13, 2022) (noting the same trilogy).

Rule 702 "has a liberal policy of admissibility[,]" *Pineda v. Ford Motor Co.*, 520 F.3d

237, 243 (3d Cir. 2008); *see also United States v. Scripps*, 599 F. App'x 443, 447 (3d Cir. 2015)

(same), as "the question of whether the expert is credible or the opinion is correct is generally a

question for the fact finder, not the court[,]" *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802

F.3d 1283, 1296 (Fed. Cir. 2015).  "Vigorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means

3

of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017) (quoting *Daubert*, 509 U.S. at 596). However, "testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the fact-finder." *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 435 (D. Del. 2004).

While Rule 702 incorporates, to some extent, the danger of unfair prejudice, courts may still exclude expert testimony under Federal Rule of Evidence 403. *See Allscripts Healthcare, LLC v. Andor Health, LLC*, 2022 WL 3021560, at *2 (D. Del. July 29, 2022) (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)); *CareDx, Inc. v. Natera, Inc.*, 2021 WL 1840646, at *2 (D. Del. May 7, 2021) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994)). Rule 403 states that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403 grants a district court "broad discretion," and district courts should "explicitly engage in some 403 balancing on the record." *United States v. Heinrich*, 971 F.3d 160, 163 (3d Cir. 2020). "When a trial court engages in such a balancing process and articulates on the record the rationale for its conclusion, its determination is rarely disturbed." *Id.*; *see also United States v. Hans*, 738 F.2d 88, 91 (3d Cir. 1984) (explaining that trial judges have "broad discretion" under Rule 403).

## III.    DISCUSSION

ASC moves to exclude expert testimony from Boyles and Swanger as to the lack of noninfringing substitute products (i.e., the second *Panduit* factor); convoyed sales; and objective indicia of nonobviousness. *See* D.I. 213. The Court addresses each issue in turn.

## A.     Noninfringing Substitute Products

ASC argues that Boyles improperly compared potential noninfringing alternatives to the

Accused Products, rather than to Victualic's patented products, and that both Boyles and

Swanger improperly narrowed the scope of potential noninfringing alternatives to only products

that also practiced the '796 patent.  D.I. 213 at 13–14.  Victaulic responds that Boyles "assessed

the features present in *both* companies' captured coupling products" and that Swanger and

Boyles "concluded that the market here reflects only two suppliers of products (Victaulic and

ASC) that provide the benefits of faster installation and reduced labor."  D.I. 235 at 6–8

(emphasis in original).

> According to the Federal Circuit,
>
> "When a patentee proves it would have made additional sales but for a defendant's
> infringement, the patentee is entitled to be made whole for the profits it proves it
> lost."  More specifically, "a patentee is entitled to lost[-]profit damages if it can
> establish four things: (1) demand for the patented product; (2) absence of acceptable
> non-infringing alternatives; (3) manufacturing and marketing capability to exploit
> the demand; and (4) the amount of profit it would have made."

*Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 32 F.4th 1161, 1179–80 (Fed.

Cir. 2022) (quoting *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284–85 (Fed.

Cir. 2017), in turn citing *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th

Cir. 1978)) (alterations in original).  "The second factor . . . considers demand for particular

limitations or features of the claimed invention."  *Mentor Graphics*, 851 F.3d at 1285.

> [I]f there is a noninfringing alternative which any given purchaser would have
> found acceptable and bought, then the patentee cannot obtain lost profits for that
> particular sale.  For example, if the customer would have bought the infringing
> product without the patented feature . . . , then the patentee cannot establish
> entitlement to lost profits for that particular sale.

*Id.* at 1286 (footnote omitted).  The Court should ask "whether a non-infringing alternative

would be acceptable compared to the patent owner's product, not whether it is a substitute for the

infringing product." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017). As explained above, under Rule 702, an "expert's testimony [must be] supported by good grounds." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 834 (3d Cir. 2020) (internal quotation marks and citation omitted).

The Court finds that Boyles and Swanger had good grounds for their finding of a two-supplier market. The Court also finds that ASC's objections go to the weight of the evidence rather than to its admissibility. Here, Boyles's Updated Export Report of March 7, 2022 (Boyles's "Opening Report") concludes that "the integration of such products into a standalone SLT Product provides certain features demanded by the market and would suggest the standalone products are not acceptable substitutes (as they do not possess those features)." D.I. 214, Ex. A ¶ 64. Boyles also evaluates marketing materials and statements of personnel from ASC and from Victaulic that say Victaulic's patented products and the Accused Products promote reductions in "installation time" and "labor fatigue," as well as "increased confidence in the installation . . . ." D.I. 214, Ex. A ¶¶ 65–66. Boyles explains that ASC's and Victaulic's customers willingly paid a premium for "features [their products] possessed over the traditional standalone product." D.I. 214, Ex. A ¶ 71. Boyles repeats this analysis in his Reply Expert Report of April 29, 2022 (Boyles's "Reply Report") and responds to objections from ASC's expert. *See* D.I. 214, Ex. B ¶¶ 11–15. In his Rule 26(a)(2)(B) Expert Report in Reply to the April 8, 2022 Expert Report of Kimberly Cameron (Swanger's "Reply Report," D.I. 214, Ex. D), Swanger supports this analysis. Swanger writes that "ASC's SLT Flexhead sprinkler drop Products and Victaulic's AH-CC Products are the only sprinkler drop products that have ever been on the market that include a flexible sprinkler drop hose and integrated grooved-pipe coupling." D.I. 214, Ex. D ¶ 147.

ASC objects that Boyles's and Swanger's market definition is "without justification in fact or principle[,]" D.I. 249 at 3, and ASC says Boyles should have evaluated the motivations of consumers that purchased traditional and patented products, D.I. 213 at 16. However, the Court finds that Boyles and Swanger provide sufficient support for their testimony to meet the admissibility threshold under Rule 702 because the experts identify certain features that products in their market must possess (i.e., preassembly to reduce installation time) and a basis for that determination (i.e., marketing materials and the willingness of customers to pay a premium). ASC may, of course, point out any weaknesses in Boyles's and Swanger's opinions on cross-examination. The jury, not the Court, will decide what weight to give the experts' analyses.

The Court also finds that Boyles did not improperly discuss the Accused Products. Boyles's Opening Report recites that "factor two of *Panduit* focuses on what is found to be acceptable alternatives based on the features and functionality of the patented technology." D.I. 214, Ex. A ¶ 60. Boyles then proceeds to explain that both the Accused Products and Victaulic's patented products share certain features that make them the only two products available in the market. *See* D.I. 214, Ex. A ¶¶ 66–68. Boyles's Reply Report largely repeats these arguments. *See* D.I. 214, Ex. B ¶¶ 13–15. Boyles repeatedly compares the potential substitutes to the "patented products," which he defines to include both the Accused Products and the patented products. D.I. 214, Ex. B ¶ 9 n.19. ASC argues that, "[e]ven if Mr. Boyles *also* considered AH-CC Products with ASC's products [citation omitted], it would not save his opinions. The *Panduit* analysis requires a hypothetical marketplace that eliminates the accused products." D.I. 249 at 1–2 (emphasis in original). However, the Court finds that Boyles could properly discuss the Accused Products to support his opinions about a two-supplier market. ASC is correct that, once Boyles determines that there *is* a two-supplier market, Boyles must then compare the

substitute products only to Victaulic's patented products.  To the extent Boyles fails to do this at

trial, Victaulic may raise its objections again to the Court.

ASC's objections "go to the weight" of Boyles's and Swanger's testimony, not its

admissibility.  *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 460 (D. Del.

2020).  Should Boyles fail—after he establishes a two-supplier market—to compare potential

noninfringing substitutes to *only* Victaulic's patented products, ASC may object at trial.

### B.    Convoyed Sales

ASC argues that Boyles was required but failed to "undertake an analysis of the

functional relationship" between Victaulic's patented products and the products Boyles says

were sold with those products.  D.I. 213 at 17.  ASC also argues that Boyles could not rely upon

Swanger's insufficient and unsupported testimony.  D.I. 213 at 17.  Victaulic responds that

"Swanger analyzed the functional relationship between the AH-CC products and the convoyed

products" and that Boyles appropriately found convoyed sales despite the lack of one-to-one

relationship between convoyed products and Victaulic's patent products.  D.I. 235 at 11–12.

"Convoyed or derivative sales occur where the sale of one thing is likely to cause the sale

of another, such as selling a razor and then also being able to sell the blades to go with it."

*Genuine Enabling Tech. LLC v. Sony Corp.*, 2021 WL 1380307, at *1 (D. Del. Apr. 12, 2021)

(cleaned up).  "A patentee may recover lost profits on unpatented components sold with a

patented item, a convoyed sale, if both the patented and unpatented products 'together were

considered to be components of a single assembly or parts of a complete machine, or they

together constituted a functional unit.'"  *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262,

1268 (Fed. Cir. 2008) (quoting *Rite–Hite Corp. v. Kelley Co. Inc.*, 56 F.3d 1538, 1550 (Fed. Cir.

1998)).  Where the components comprise a "functional unit," lost profits damages are

appropriate only where "the patent-related feature drives demand for the functional unit as a

8

whole."[2] *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 491 (D. Del. 2019).  Lost

profits damages are appropriate for convoyed sales if, for example, the convoyed products do not

"command a market value and serve a useful purpose independent of the patented product." *Am.*

*Seating*, 514 F.3d at 1269.  However, "[a] functional relationship does not exist when

independently operating patented and unpatented products are purchased as a package solely

because of customer demand." *Id.* at 1268.

The Court finds (i) that Swanger evaluates the functional relationship between Victaulic's

patented products and the potential convoyed products and (ii) that Boyles properly relies on

Swanger's analysis.  As explained above, a technical expert's testimony must be supported by

good grounds. *See UGI Sunbury*, 949 F.3d at 834.  Here, Swanger opines that

> Victaulic's AH-CC Products are functionally related to the following other
> Victaulic products because they are used together to form a single assembly or
> functional unit (specifically a complete fire suppression system for a building, or at
> least the portion therefore extending from the branch line through to the end
> sprinkler head): [listing, e.g., sprinkler heads, "mounting brackets," "Victualic's
> innovative groove system," and "sprinkler head accessories."].

D.I. 214, Ex. D ¶ 151.  Swanger explains, for example, that "use of Victaulic's AH-CC Products

without Victaulic's approved brackets . . . would violate [certain] approvals and regulations."

D.I. 214, Ex. D ¶ 151(b).[3]  Thus, Swanger provides good grounds for the opinion that certain

products are part of the same functional unit, and Boyles may rely upon this analysis.

---

[2] Victaulic objects that ASC (and, by extension, the Court) applies the wrong legal standard.  D.I.
235 at 14.  However, the convoyed sales rule derives from the entire market value rule, *Rite-Hite*,
56 F.3d at 1549–50, which "permits recovery of damages based on the value of a patentee's
entire apparatus containing several features when the patent-related feature is the 'basis for
customer demand[,]'" *id.* at 1549 (citation omitted); *see Zimmer Surgical*, 365 F. Supp. 3d at 491
(connecting convoyed sales and the entire market value rule).  Thus, a party receives credit for a
convoyed sale only if the patented feature drives demand for the entire "functional unit."
[3] ASC raises specific issues with Swanger's opinions in paragraph 151(d), D.I. 213 at 19–20, but
fails to re-raise them in its Reply Brief, D.I. 249 at 3–4, and thus waives those objections.
Swanger's opinions, *see* D.I. 214, Ex. D ¶ 151(d) (describing how certain accessories offer

According to Boyles, "Victaulic generally expects that for every VicFlex hose sold, it would also sell a bracket, a sprinkler head, and a cover plate (a one-to-one relationship for each convoyed product)[,]" while other products "are understood to be sold in less than a one-to-one ratio to the VicFlex hose." D.I. 214, Ex. A ¶ 99. VicFlex appears to be a brand name for Victaulic's patented "AH2-CC Braided Hose." *See* D.I. 214, Ex. D ¶ 145. When Boyles examined data about how often certain products were sold with Victaulic's patented products, Boyles found that the number of "convoyed units sold for every one unit of the patented product sold" was far less than 1.0. *See* D.I. 214, Ex. A ¶ 104. Rather, sales ranged from 0.521 brackets to 0.003 couplings sold for every VicFlex hose sold. *Id.* Boyles updated these calculations in his Reply Report to remove one product line and admits that "the results appear to be conservative in relation to the hypothesized results . . . ." D.I. 214, Ex. B ¶¶ 64–65, 67.

ASC first argues that, since Boyles's data proves that the convoyed products are not "usually" sold together, Boyles may not opine as to lost profits sought for those potential convoyed products. D.I. 213 at 18–19. This Court previously concluded that, "[i]f [products] can function independently, patented and unpatented products do not constitute a functional unit."[4] *Immersion Corp. v. HTC Corp.*, 2015 WL 834209, at *4 (D. Del. Feb. 24, 2015) (citing

_____

protection "against damage" or "rotate the sprinkler head"), are sufficient to address ASC's general concerns that Swanger reaches only "superficial conclusions," D.I. 249 at 3–4.
[4] The Federal Circuit has explained that a patentee cannot receive credit for convoyed sales where products "were sold together for reasons of convenience and one-stop shopping, not because of an absolute requirement that the two items function together." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1334 (Fed. Cir. 2009) (internal quotation marks and citation omitted). However, "a functional relationship between a patented device and an unpatented material used with it is not precluded by the fact that the device can be used with other materials or that the unpatented material can be used with other devices." *Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1372 (Fed. Cir. 2004). In *Immersion Corporation*, the Court concluded that "a software package that mobile device manufacturers can use to incorporate haptic feedback in their devices" was not a "functional unit" with the patented products because the software device was not "the only means of implementing haptic effects."

10

*Rite-Hite*, 56 F.3d at 1551). While Victaulic mischaracterizes ASC's argument, *see* D.I. 235 at

12 (arguing that ASC insisted on "a one-to-one relationship" to be a "functional relationship"),

Boyles responds to ASC's claims: In cases where Victaulic sold a patented product and did not

sell an accompanying bracket, for example, the customer may have "supplemented its purchase

of Victaulic brackets through the channel partners, or otherwise without reference to the project."

D.I. 214, Ex. B ¶ 63; D.I. 235 at 12; *see also* D.I. 214, Ex. B ¶ 61 ("[Victaulic's] sales reporting

is not always effectively lined up such that an order is placed for ten hoses, ten brackets, and ten

sprinkler heads. Instead, . . . channel partners may provide purchase orders for different

products, in different amounts, and at different points in time."). Thus, Boyles's data,

understood in context, fails to show that the convoyed products are *not* part of a functional unit

with (or that they can function independently from) Victaulic's patented product.

ASC also takes issue with the failure of Swanger or Boyles to "address[] whether the

alleged convoyed products are purchased together solely because of convenience or business

advantage." D.I. 213 at 20. As Victaulic points out, D.I. 235 at 13, the fact a customer gains

convenience—and a patentee gains a business advantage—from the sales of products together

does not mean that the products are *not* part of a "functional unit." As explained above, Swanger

had good grounds to conclude that the other products, such as sprinkler heads and brackets,

operated as a "functional unit" with Victaulic's patented products, so no separate analysis of

convenience and business advantage is required. *See Am. Seating*, 514 F.3d at 1268.

---

2015 WL 834209, at *4. By comparison, in *Juicy Whip*, the Federal Circuit held that, even
though "other syrups may be used in Juicy Whip's dispenser and, likewise, other dispensers
could use Juicy Whip's syrups[,]" the unpatented syrup and patented dispenser "'function
together to achieve one result,'" 382 F.3d at 1372 (quoting *Rite-Hite*, 56 F.3d at 1551), because
"the non-patented syrup was central to the 'visual appearance' of the patented dispenser[,]" *Am.
Seating*, 514 F.3d at 1269 (explaining the *Juicy Whip* result parenthetically).

Lastly, ASC argues that Victaulic "does not show that any feature of the patent drives demand for the alleged functional unit . . . ." D.I. 213 at 21.  However, Victaulic responds to ASC in its Answering Brief, D.I. 235 at 15, and ASC drops this argument in its Reply Brief, *see* D.I. 249 at 3–4.  Thus, the Court considers the argument waived.

The Court denies the Motion as to Swanger's and Boyles's opinions on convoyed products.  ASC's objections to the quality of Swanger's "functional unit" analysis and as to whether Boyles is correct that customers acquire convoyed products through other channels go to the weight the jury should give to the testimony, not to its admissibility.

## C.   Objective Indicia of Nonobviousness

ASC argues that Swanger's opinions—as to (1) whether ASC copied Victaulic's invention and (2) ASC's willingness to procure a license demonstrate that the '796 patent's nonobviousness—are beyond Swanger's expertise and based on incorrect statements of law.  D.I. 213 at 21, 24.  Victaulic responds that "Swanger opined, based on his technical analysis, that ASC copied the patented invention"; that Swanger's analysis is based on a review of technical information that would be beyond a juror's comprehension; and that Swanger's license analysis "properly integrated such facts into his technical nonobviousness analysis from a [person of ordinary skill in the art's (POSA)] perspective." D.I. 235 at 16, 18–19 (emphasis in original).  The analysis at issue is from Swanger's Rule 26(a)(2)(B) Expert Report in Rebuttal to the March 4, 2022 Expert Report of Kimberly Cameron (Swanger's "Rebuttal Report," D.I. 214, Ex. C).

Where expert opinions "do not contain specialized knowledge outside a juror's common understanding[,]" are not technical or scientific in nature, "were not reached by application of a scientific method or procedure[,]" or are based on unreliable data, the opinions are inadmissible under Rule 702.  *CareDx*, 2021 WL 1840646, at *3.  If parties seek to introduce factual evidence that may be introduced through other witnesses by way of an expert's testimony, the Court may

12

exclude such testimony "under Rule 403, as the testimony would waste time and needlessly present cumulative evidence and would unfairly prejudice the defense." *F'real Foods, LLC v. Hamilton Beach Brands, Inc.*, 2019 WL 1578259, at *1 (D. Del. Apr. 11, 2019).

Swanger explains that his "background is in the area of both metallurgical engineering including physical metallurgy and mechanical engineering" and that he has "substantial experience in the areas of metallurgical engineering and alloy design." D.I. 214, Ex. C ¶ 4. Swanger adds that he has assisted in the prosecution of one patent and managed the patent portfolio of a company. *Id.* In the paragraphs at issue, Swanger opines that Victaulic sold "the first grooved pipe coupling that could be installed without disassembly[,]" that ASC knew of and designed the Accused Products in a manner similar to Victaulic's products, and that the "evasiveness" of an ASC witness and "[a] timeline of ASC's activity" showed that ASC copied the patent. D.I. 214, Ex. C ¶¶ 382–88. Swanger cites, as the basis of his opinions, the deposition of ASC Engineer Steve Scott, other depositions (e.g., the "Beagen" deposition), and marketing materials. *Id.* None of Swanger's conclusions are technical in nature. Swanger largely discusses ASC's awareness of, development of, and sale of installation-ready couplings, as well as its awareness of the '796 patent. *Id.*

Swanger's copying opinions are not beyond a juror's comprehension. Thus, the Court excludes them under Rule 702. Experts may offer opinions only if "the expert's . . . technical . . . knowledge will help the [jury] to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702(a). Victaulic argues that Swanger may opine as to copying because its copying allegations rely on communications that include technical information. *See* D.I. 235 at 18. However, whether or not a coupling is "installation-ready" (if that issue is even contested, *see* D.I. 22 ¶ 33 (admitting that the Accused Products are "in some circumstances . . . referred to

13

as being 'ready for installation'")), is not the type of technical information that a lay juror would require an expert to understand.[5]  Further, technical and scientific knowledge of metallurgy does not qualify Swanger to opine as to the "evasiveness" of ASC's designer in answering questions or whether ASC's copying was "illegal." D.I. 214, Ex. C ¶¶ 385, 392.  Swanger's opinions are not of a technical or scientific nature and, thus, should be excluded under Rule 702.

The Court similarly excludes Swanger's licensing opinions under Rule 702.  Swanger opines that "ASC took a product-specific, royalty-bearing license" "[i]n view of the fact that ASC's efforts to invalidate the '796 patent had failed or were failing in October 2016[,]" and he concludes that ASC's acceptance of this license "demonstrates ASC's own acquiescence to the validity and nonobviousness of the '796 patent." D.I. 214, Ex. C ¶¶ 396–97.  Victaulic asserts that Swanger "properly integrated [] facts" about "ASC's willingness to take a license" into "his technical nonobviousness analysis from a [POSA]'s perspective." D.I. 235 at 19.  However, it is not a "fact" that taking a royalty-bearing license is an admission of infringement.  Additionally, a jury does not need expert testimony as to whether the SlideLOK couplings fall within the parties' prior settlement agreement, since the agreement, itself, is explicit.  *See* D.I. 22, Ex. A at 2, 7 (granting a license to "Anvil Product[s]" and defining "Anvil Products" to include "SlideLOK couplings").  Even if a jury needed such an expert, Swanger asserts no expertise in patent licensure or contract interpretation and, thus, could not fill that role.  Thus, the Court excludes Swanger's nonobviousness opinions as to ASC's license under Rule 702.

---

[5] This Court's opinion in *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, is not to the contrary. *See* C.A. No. 14-878-LPS, D.I. 379 ¶ 5.  There, the Court permitted an expert to testify as to evidence that could suggest the defendant's intent because at issue was "how Teva's actions (including its marketing materials) are understood by physicians." *Id.*  Victaulic points to no issue here that would require similar expert opinion. *See* D.I. 235 at 18–19.

14

The Court also excludes Swanger's nonobviousness opinions as to copying and licensure for two other reasons. First, "[e]xpert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case[,]" which "merely substitut[es] the expert's judgment for the jury's and would not be helpful to the jury." *Allscripts Healthcare*, 2022 WL 3021560, at \*27 (cleaned up). Swanger seeks to opine that ASC's alleged copying is "illegal," that "ASC's designer's evasiveness made clear that ASC had . . . copied Victaulic's coupling design[,]" and that "ASC knew" about Victaulic's patented products and the advantages thereof. D.I. 214, Ex. C ¶¶ 383(a), 385, 392. However, Swanger's "mere personal belief as to the weight of the evidence invades the province of the fact-finder." *Oxford Gene Tech.*, 345 F. Supp. 2d at 435 (discussing Rule 702). Further, putting an expert's imprimatur on such opinion testimony would cause ASC "unfair prejudice" and, thus, should also be excluded under Rule 403.

Second, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Swanger discusses when Victaulic and ASC began to sell the products at issue in this case, how ASC developed the Accused Products (e.g., ASC's use of "market analysis"), the employment history of at least one ASC employee, and the contents of the license ASC obtained from Victaulic. D.I. 214, Ex. C ¶¶ 381–98. This factual evidence is repetitive of evidence that "should be presented through fact witnesses and/or documents." *F'real Foods*, 2019 WL 1578259, at \*1. Thus, the Court also excludes Swanger's recitation of facts potentially relevant to secondary considerations of copying and licensure under Rule 403.

Lastly, Victaulic argues, "Swanger's opinion that 'ASC's SlideLOK couplings infringe Asserted Claims 1, 21, 41, and 44' of the '796 patent should still not be excluded because it

relies entirely on Dr. Swanger's technical infringement analysis . . . ." D.I. 235 at 20 (quoting D.I. 214, Ex. C ¶ 389). Rule 702 only permits testimony "based on sufficient facts or data" and that "is the product of reliable principles and methods[.]" Here, Swanger says only that his opinion is "for the same reasons as explained in my Opening Report[,]" but he fails to conduct any analysis that compares the "combination of the SlideLOK coupling with two grooved pipe elements" to the limitations in the claims at issue. D.I. 214, Ex. C ¶ 389. Thus, the Court excludes Swanger's opinion for lack of factual support and failure to articulate a reliable method.

The Court grants the Motion to exclude the opinions recited in paragraphs 381–398 of Swanger's Rebuttal Report. The Court need not consider ASC's other arguments to exclude this testimony. *See* D.I. 213 at 24–25.

*     *     *

For the reasons explained above, the Court denies the Motion to exclude Boyles's and Swanger's opinions as to potential noninfringing substitutes and convoyed products. The Court grants the Motion to exclude the opinions in paragraphs 381–398 of Swanger's Rebuttal Report.

The Court will issue an Order consistent with this Memorandum Opinion.

16