IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

VICTAULIC COMPANY,

                      Plaintiff,

            v.

ASC ENGINEERED SOLUTIONS, LLC,

                   Defendant.

Civil Action No. 20-887-GBW

## MEMORANDUM ORDER

Plaintiff Victaulic Company ("Victaulic") alleges that Defendant ASC Engineered

Solutions, LLC ("ASC") infringed United States Patent No. 7,712,796 ("the '796 patent"). D.I.

1 ¶ 1; D.I. 152 ¶ 6. Pending now is Victaulic's Motion #1 for Summary Judgment Against

ASC's Prior Art Invalidity Defenses Involving Claim 1 of the '796 Patent (the "Motion," D.I.

193). The Court has reviewed the parties' briefing, D.I. 194; D.I. 220; D.I. 229, and statements

of facts, D.I. 195; D.I. 221. For the reasons below, the Court grants Victaulic's Motion.

## I.   BACKGROUND

### A.   *Inter Partes* Reexamination

The '796 patent was filed in 2006. D.I. 1-1, Ex. 1. At that time,[1] a third-party requester

could "file a request for *inter partes* reexamination by the [United States Patent and Trademark

Office (PTO)] of [specific claims of] a patent on the basis of any prior art . . . ." 35 U.S.C. § 311

(2006). If the PTO found that the requester raised "a substantial new question of patentability[,]"

the PTO would order *inter partes* reexamination. 35 U.S.C. § 313 (2006). As part of the

reexamination, both the patentee and the third-party requester could respond to documents that

---

[1] The Court applies the Patent Act as codified prior to the America Invents Act ("AIA"), Pub. L.
No. 112-29, § 6(a), 125 Stat. 284, 299, 300–01 (Sept. 16, 2011).

the other side filed. 35 U.S.C. § 314(b) (2006); *see Regents of the Univ. of Minnesota v. LSI Corp.*, 926 F.3d 1327, 1335 (Fed. Cir. 2019) ("*[I]nter partes* reexamination allowed the third-party requestor to participate throughout the proceeding."). The patentee or the third-party requester could also appeal the PTO's initial decision to the Board of Patent Appeals and Inferences ("Board"). 35 U.S.C. §§ 315(a), (b) (2006); *LSI*, 926 F.3d at 1335. However, once the PTO ordered *inter partes* reexamination, the "third-party requester . . . [was] estopped from asserting at a later time, in any civil action" relating to patents, "the invalidity of any claim finally determined to be valid and patentable on any ground which the [] requester raised or could have raised during the *inter partes* reexamination proceedings." 35 U.S.C. § 315(c) (2006); *see also* S. Rep. No. 110-259, at 19 (2008) (calling the "estoppel provisions" "severe"). The parties agree that those rules apply to this dispute. *See* D.I. 194 at 2; D.I. 220 at 1.[2]

### B.   Invalidity Contentions at Issue

ASC, then known as Anvil International, D.I. 79, asserted before the PTO during *Inter Partes* Reexamination Control No. 95/001,880 (the "IPR") that the '796 patent was invalid as obvious in light of U.S. Patent Nos. 1,867,891 ("Reynolds") and 4,522,434 ("Webb"), D.I. 221 ¶¶ 2–5. During the IPR, ASC "asserted that claim 1 of the '796 patent was obvious over: a. Reynolds . . . ; and/or b. Reynolds in view of Webb or vice versa," and the Board adopted ASC's arguments. D.I. 221 ¶¶ 5–7. In this action, ASC asserts that "a. . . . claim 1 [of the '796 patent] is rendered obvious . . . by Reynolds" and that "b. . . . claim[] 1 is rendered obvious . . . over Reynolds in view of Webb." D.I. 221 ¶ 10 (cleaned up).

### C.   Interpretation of Claim 1 of the '796 Patent

Claim 1 of the '796 patent claims the following:

---

[2] Congress repealed the *inter partes* reexamination procedures in the AIA and replaced them with *inter partes* review. *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018).

> 1. In combination, interconnectable pipe coupling segments and a pair of pipe elements . . . wherein each said segment comprises:
>
>> . . .
>>
>> connection members for adjustably connecting one coupling segment to another, . . . *said segments being deformable upon adjustable tightening of said connection members so as to substantially conform the curvature of said arcuate surfaces to the outer surfaces of said pipe elements within said circumferential grooves* [(the "being deformable" limitation)].

D.I. 1-1, Ex. 1 at 11:33–61 (emphasis added); *see id.* at 13:41–45, 15:37–41, 16:37–41 (claims

21, 41, and 44). The PTO added certain language (underlined below) to the being deformable

limitation in claims 21, 41, and 44 of the '796 patent during the IPR:

> "said segments being deformable upon adjustable tightening of said connection members, because of the contact between said arcuate surfaces and said outer surfaces of said pipe elements, so as to substantially conform the curvature of said arcuate surfaces to the outer surfaces of said pipe elements within said circumferential grooves as said connection members are tightened."

D.I. 101, Ex. A at 1 (emphases in original). However, the PTO "mistakenly omitted" that text

from its formal decision, Reexamination Certificate No. 1584. *Id.* "Victaulic requested a

certificate of correction to correct the []PTO's mistake." *Id.*

    In this Court, the parties jointly requested that the being deformable limitation in Claims

21, 41, and 44 be construed to correct the PTO's error by adding the underlined text. *Id.* The

Court adopted the parties' agreed-upon construction. *See* D.I. 124 at 3. ASC further argued that

the Court should construe the being deformable limitation in Claim 1 as it did in the other claims.

D.I. 101, Ex. A at 4–5. During the Court's *Markman* hearing, counsel for ASC argued that

> the re-examination histories make it clear that the Board and the Examiner both construed the claim limitation in claim 1 with or without the amendments added by Victaulic to require that the contact between the segments and the pipe elements causes the deformation of the segment so as to conform the curvature of the arcuate surfaces to the outer surfaces of the pipe element.
>
>> . . .
>>
>> [] [T]he nature of this claim limitation is going to require expert analysis to determine when the bolts are tightened and the coupling is brought together and the segments are brought together, is the deformation caused by contacting the pipe?

3

Like if you bend to stick it over your knee or is it just an inherent property of the coupling?

Tr. of Sept. 23, 2021 Hr'g at 40:7–23. Since the parties would need to engage in expert discovery, the Court declined to construe the term. *Id.* at 40:24–42:4; D.I. 124 at 1–2.

## II.   **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that could lead a reasonable jury to find in favor of the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Id.* (citation omitted). The Court must enter summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Celotex*, 477 U.S. at 322). The Federal Circuit applies "the law of the regional circuit, here the Third Circuit." *Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069, 1075 (Fed. Cir. 2021).

## III.   **DISCUSSION**

Victualic argues that "ASC cannot now reassert" the invalidity of Claim 1 in light of Reynolds and Webb "in this District Court case" pursuant to § 315(c). D.I. 194 at 1. ASC responds that Victaulic's "unduly broad interpretation" of the being deformable limitation arose after the IPR, so "ASC's prior-art-based invalidity grounds were not and could not have been raised during the [IPR] . . . ." D.I. 220 at 1–2.

4

ASC's briefing cites no cases aside from the summary judgment standard, D.I. 220, and

Victaulic cites only to cases that interpret the post-AIA Patent Act, D.I. 194 at 6–8; D.I. 229 at 1.

However, other sections of the pre-AIA Patent Act provide some guidance as to what constitutes

a ground that ASC "raised or could have raised" as to "any claim finally determined to be valid"

in the *inter partes* reexamination process under § 315(c). Pre-AIA Section 317 states that,

> if a final decision in an *inter partes* reexamination proceeding instituted by a third-party requester is favorable to the patentability of any original or proposed amended or new claim of the patent, then neither that party nor its privies may thereafter request an *inter partes* reexamination of any such patent claim on the basis of issues which that party or its privies raised or could have raised in such . . . *inter partes* reexamination proceeding . . . .

35 U.S.C. § 317(b) (2006). The Federal Circuit explained that "[t]his language [in § 317(b)]

limits the scope of estoppel in two ways: (i) to the specific claims that were actually at issue . . . ;

and (ii) to challenges to *those* claims that were raised or could have been raised." *In re Affinity

Labs of Texas, LLC*, 856 F.3d 883, 891–92 (Fed. Cir. 2017) (emphasis in original). The Court

added that "the *inter partes* reexamination statutory scheme consistently reflects a careful,

express focus on implementing this regime on a claim-by-claim basis[,]" and the Court applied

the same interpretation to § 315(c). *Id.* at 892 (reviewing 35 U.S.C. §§ 311–13, 315 (2006)).

At the time ASC requested the IPR, Claim 1 of the '796 patent had the same language as

it has now: "said segments being deformable upon adjustable tightening of said connection

members so as to substantially conform the curvature of said arcuate surfaces to the outer

surfaces of said pipe elements within said circumferential grooves." D.I. 196-1, Ex. A at 21–22.

ASC argues that the "issues" giving rise to ASC's invalidity contentions in this action—in light

of the Reynolds and Webb prior art references—arose "*after* the conclusion" of the IPR. D.I.

220 at 3 (emphasis in original). Thus, ASC argues that its current invalidity contentions are not

grounds that it "could have raised" during the IPR proceedings. *Id.*

In its request for the IPR proceedings, ASC explained that

> Claim 1 of the '796 patent also requires the limitation of each segment "being deformable . . . ." In col. 8, lines 49–51, *Webb* discloses that "upon tightening of the bolts, the respective coupling segments flex about the center thereof." . . . Additionally, FIG. 5 shows that, *upon tightening of the bolts, the arcuate surfaces conform to the outer surfaces of the pipes within the grooves*. In col. 8, lines 33–35, *Webb* further discloses that "prior to tightening down of the nuts, each coupling segment is of a radius slightly greater than the radius of the pipe," disclosing that *after tightening down of the nuts, each coupling segment deforms* so that the arcuate surfaces of each coupling segment are of a radius smaller than the radius of the pipe, bringing the arcuate surfaces within the grooves. . . .

D.I. 196-1, Ex. A at 27 (emphases added). ASC further explained that

> Claim 1 of the '796 patent also requires the limitation of each segment "being deformable . . . ." *Reynolds* teaches this limitation on page 4, lines 2–4, stating: "Upon screwing up the nuts on the bolts *pp* of such a housing *k* the parts *qq* are gradually *deformed* into circular shape . . . ." (emphasis added). FIG. 13, in view of the embodiment of FIG. 7 . . . , teaches one of ordinary skill in the art that *the coupling segments deform upon adjustable tightening of the connection members so as to conform the curvature of the arcuate surfaces substantially to the outer surfaces of the pipe elements* within the circumferential grooves.

D.I. 196-1, Ex. A at 114 (second emphasis added); *see also* D.I. 196-1, Ex. A at 148–50

(discussing Webb in view of Reynolds).

The above quotes demonstrate that, when ASC requested the IPR, ASC argued that Webb

and Reynolds rendered the "being deformable" limitation of Claim 1 of the '796 patent obvious

based on the still-present language of Claim 1. ASC does not argue that the proper construction

of that limitation has changed. ASC, instead, argues that "Victaulic now asserts an

*interpretation* of the ["being deformable"] claim limitation . . . in claim 1 that is broader than the

Board's interpretation of the claim during the [IPR] . . . ." D.I. 220 at 3–4 (emphasis added).

However, a patent claim has only "one correct construction." *Versata Dev. Grp., Inc. v. SAP

Am., Inc.*, 793 F.3d 1306, 1328 (Fed. Cir. 2015) (cleaned up), *abrogated on other grounds*,

*SIPCO, LLC v. Emerson Elec. Co.*, 980 F.3d 865, 870 n.1 (Fed. Cir. 2020). A party's proposed

6

construction of a term does not change either how the Court must construe that term or whether a party previously asserted that a claim which includes that term was obvious in an *inter partes* reexamination.  Thus, the Court finds that ASC is estopped from asserting in this action that Claim 1 of the '796 patent is invalid as obvious in view of Webb and Reynolds because ASC raised or could have raised those invalidity grounds in the IPR.[3]

Additionally, D.I. 196-1, D.I. 220, and D.I. 222 were filed under seal, but the Court cannot find any substantive redactions in those documents.  *See* D.I. 209-1; D.I. 240; D.I. 241. The Court will unseal those documents within seven (7) days unless either party objects.  The Court requests that parties not burden the Court with the unnecessary sealing of documents, such as publicly available documents, *see, e.g.*, D.I. 241, Ex. A.[4]

WHEREFORE, at Wilmington this 30th day of November, 2022, **IT IS HEREBY ORDERED** that Victaulic's Motion #1 for Summary Judgment Against ASC's Prior Art Invalidity Defenses Involving Claim 1 of U.S. Patent No. 7,712,796 (D.I. 193) is **GRANTED**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[3] ASC could have raised its real argument—i.e., that the IPR added limitations to Claim 1, *see* D.I. 220 at 2 (discussing Victaulic's attempt to "shirk the prosecution history estoppel resulting from its own representations" during the IPR)—in a summary judgment motion.  However, ASC earlier forfeited the chance to bring such a motion.  *See* D.I. 261 at 1.

[4] *See generally In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 673 (3d Cir. 2019) ("[T]he public and the press have a First Amendment right of access to civil trials."); *Takeda Pharms. U.S.A., Inc. v. Mylan Pharms., Inc.*, 2019 WL 6910264, at *1 (D. Del. Dec. 19, 2019) (expressing concern about the filing of "pleadings and briefs" under seal and the "over-redact[ion]" of sealed documents); C.A. Docket No. 18-1259, D.I. 162 (warning against redacting "parts of a document that contains publicly available materials" in their entirety).