## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VICTAULIC COMPANY, | |
| Plaintiff, | |
| v. | Civil Action No. 20-887-GBW |
| ASC ENGINEERED SOLUTIONS, LLC, | |
| Defendant. | |
| ASC ENGINEERED SOLUTIONS, LLC, | |
| Counterclaim-Plaintiff, | |
| v. | |
| VICTAULIC COMPANY, | |
| Counterclaim-Defendant. | |

Brian P. Egan, Andrew Mark Moshos, Anthony David Raucci, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Alekzandir Morton, Benjamin L. Kiersz, Bryan P. Collins, Christopher E. Stretch, Colin T. Kemp, Surui Qu, Kenneth E. Keller, PILLSBURY WINTHROP SHAW PITTMAN LLP, San Francisco, California

*Counsel for Plaintiff*

Kenneth L. Dorsney, Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, Delaware; Coby S. Nixon, Jeffrey R. Kuester, Seth K. Trimble, Todd E. Jones, Kelly C. Mullally, Cory M. Mull, TAYLOR ENGLISH DUMA LLP, Atlanta, Georgia

*Counsel for Defendant*

## MEMORANDUM OPINION

April 25, 2024
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiff Victaulic Company ("Victaulic") filed this action against Defendant ASC Engineered Solutions, LLC ("ASC"), alleging that ASC infringed United States Patent Nos. 7,712,796 ("the '796 patent"), 10,458,579 ("the '579 patent"), and 10,627,025 ("the '025 patent") (collectively, the "Asserted Patents"). D.I. 1 ¶ 1. Pending before the Court is Victaulic's Consolidated Post-Trial Motion (1) To Vacate '579/'025 Claim Construction (D.I. 124) and Dependent Non-Infringement Judgment (D.I. 153); (2) To Alter or Correct the Court's Judgment Regarding ASC's Royalty Payments; (3) For Judgment as a Matter of Law ("JMOL") as to Direct Infringement of the '796 Patent; (4) For JMOL as to ASC's License Defense; and (5) Alternatively to the Relief Sought in (2) Through (4), Above, for a New Trial. D.I. 360 ("the Motion").

The Court has reviewed the parties' briefing, *see* D.I. 361; D.I. 367; D.I. 369, and oral argument is not necessary, D.I. 370 (requesting oral argument). For the reasons explained below, the Court **DENIES** the Motion in its entirety.

## I.    BACKGROUND

The Court held a *Markman* hearing on September 23, 2021 to construe the claims of the Asserted Patents. The Court entered an order on October 18, 2021, construing the claims of the '579 patent and the '025 patent to mean that the claimed "coupling assembly" in the '579 patent and the claimed "preassembled coupling" in the '025 patent "can have only one fastener." D.I. 124 at 2-3. Following this Court's Claim Construction Order, D.I. 124, the parties filed a Joint Stipulation wherein "the parties stipulate[d] to the entry of judgment against Victaulic and in favor of ASC that the accused products have not infringed and currently do not infringe the '579 and

2

'025 patents under the Court's Claim Construction Order." D.I. 152 ¶ 6. The Court entered partial judgment of noninfringement on November 22, 2021 (the "Partial Judgment Order"). D.I. 153. On April 10, 2023, the case proceeded to trial as to the '796 patent and ASC's counterclaim regarding its rights under the parties' settlement agreement. Following a five-day trial, the jury found that ASC does not infringe claims 1, 2, 3, 4, or 9 of the '796 patent and that ASC proved that the accused products are licensed by the settlement agreement. D.I. 348. The Court entered judgment on the jury verdict on May 8, 2023. D.I. 359.

## II.    LEGAL STANDARD

Under Fed. R. Civ. P. 50(a), a grant of JMOL is appropriate "where a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have had a legally sufficient evidentiary basis to find for the party on that issue." *Idenix Pharms. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149, 1153–54 (Fed. Cir. 2019) (quoting *Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1341–42 (Fed. Cir. 2008)).

Under Fed. R. Civ. P. 59, "a new trial should only be granted when a 'miscarriage of justice would result if the verdict were to stand,' the verdict 'cries out to be overturned,' or the verdict 'shocks the conscience.'" *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 503 F. Supp. 3d 156, 166 (D. Del. 2020); *see also Intellectual Ventures I, LLC v. Canon Inc.*, 104 F. Supp. 3d 629, 637 (D. Del. 2015) ("[T]he court should grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand.").

Under Fed. R. Civ. P. 60, the court "may relieve a party . . . from a final judgment, order, or proceeding for" various reasons, including "newly discovered evidence that, with reasonable

3

diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2).

### III.   ANALYSIS

#### A. Motion to Vacate '579/'025 Claim Construction Order

The Court found that the '579 and '025 patents redefined several "coupling" limitations to require "only one fastener." D.I. 124 at 2-3. ASC's SLT Products has two fasteners, so the parties "stipulate[d] to the entry of judgment against Victaulic and in favor of ASC that the accused products have not infringed and currently do not infringe the '579 and '025 patents under the Court's Claim Construction Order." D.I. 152 ¶ 6.   Victaulic now moves to vacate the Claim Construction Order under Rule 59(e) or, in the alternative, Rule 60(b)(6). *See* D.I. 367 ("Reply Br.") at 1 ("And even if it was not [timely] under Rule 59(e), it was timely under Rule 60(b)(6)[.]"). Specifically, Victaulic asserts that the Claim Construction Order is both "legally[] wrong based on the original record" and that new intrinsic evidence supports its motion to vacate. D.I. 361 ("Opening Br.") at 2.

As an initial matter, ASC asserts that such a motion is untimely. D.I. 367 ("Answering Br.") at 3-4. Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." ASC contends that Victaulic's motion is time-barred because Victaulic did not file that motion within twenty-eight (28) days of the Court entering its Claim Construction Order, D.I. 124, and the resulting Partial Judgment Order, D.I. 153. Victaulic disagrees, and asserts that its motion is timely because that motion was filed within twenty-eight (28) days of the Court's entry of final judgment, D.I. 359, as that judgment "adjudicate[d] all the claims." Opening Br. at 1 (quoting Fed. R. Civ. P. 54(b)).

The Court agrees with Victaulic that it timely filed its Motion to Vacate because the Court's Partial Judgment Order was not a "judgment" for purposes of Rule 59(e). In cases involving "more than one claim for relief," the Court may "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Otherwise, "any order or other decision, however designated," may "be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.* Rule 54(a) defines "judgment" as "any order from which an appeal lies." An appeal did not lie from the Court's Partial Judgment Order because the Court explicitly stated that the Order was "a partial judgment, not a final judgment subject to immediate appeal." D.I. 153 at 3. Accordingly, the Court's Partial Judgment Order was not an entry of judgment for the purposes of Rule 59(e). *See Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 812 (9th Cir. 1981) (requiring the entry of final judgment before a Rule 59(e) motion could be entertained, because otherwise "litigants could obtain appellate review of partial judgments by simply appealing a Rule 59(e) order."). The Court finds that Victaulic's Rule 59(e) motion was timely because it was filed within twenty-eight (28) days of Court's entry of final judgment.

The Court, however, declines to vacate its Claim Construction Order. Victaulic contends that the Court incorrectly construed the claims of the '579 and '025 patents in that Order. Opening Br. at 1-6. Thus, Victaulic's arguments amount to a request for reconsideration of the Court's initial claim construction. "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazardis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). Victaulic's re-hashed arguments do not meet the standard for reconsideration. The Court is aware of Victaulic's position on claim construction, but "[t]he way to get a second look

at claim construction [] is by appeal." *Celebrate Int'l, LLC v. LeapFrog Enters.*, No. 14-cv-261-RGA, D.I. 151 (D. Del. June 16, 2016) (denying a motion for reconsideration of a claim construction where "Plaintiff raised these arguments before.").

Victaulic also claims that a new PTO allowance of two related Victaulic patent applications proves that it was error for the Court to construe "coupling" to require only one fastener. Opening Br. at 6-8; Reply Br. at 3-4. Victaulic avers that U.S. Patent Applications Nos. 17/989,218 and 17/989,248 (the "new applications") are based on the same application and share the same specification as the '579 and '025 patents. *See* D.I. 362, Ex. C; D.I. 362, Ex. G. The PTO, in allowing the new applications, construed those new applications to permit claimed couplings with two fasteners. D.I. 362, Ex. F; D.I. 362, Ex. J. Accordingly, Victaulic contends that the Court should revisit its constructions of the terms of the '579 and '025 patents in light of the PTO interpreting the new applications to permit couplings with multiple fasteners.

The Court has reviewed the new applications and is not convinced that the PTO's findings regarding those new applications require the Court to alter its construction of "coupling." The claims of the new applications expressly disclose a two-bolt coupling and the specification of the new applications contains figures that depict a two-bolt coupling. D.I. 362-1, Ex. C at 411, 424-25, 445-49; Ex. G at 555-59, 599, 612-13. Accordingly, the new applications are materially different from the '579 and '025 patents. Indeed, the figures in the new applications are derived from U.S. Provisional Application No. 62/336,885 (the '885 provisional). *See* D.I. 96-1, Ex. M at 423, 437-38, 441. The Court previously found that the '579 and '025 patents did not effectively incorporate the '885 provisional application's disclosures because essential material may not be incorporated by reference to a provisional patent application. *See* 37 C.F.R. § 1.57(d) (incorporation by reference is ineffective as to essential matter); MPEP § 608.01(p) (same); *ZTE*

*(USA), Inc. v. Cywee Group Ltd.*, IPR2019-00143, Paper 87, 2021 Pat. App. LEXIS 985, at \*133 (P.T.A.B. Feb. 17, 2021) (patentee's incorporation by reference of provisional application was "ineffective" as to essential matter); D.I. 95 at 81-83 (discussing this issue); D.I. 124 (the Court's claim construction order denying Victaulic's argument that the '885 provisional sufficiently discloses a two-bolt embodiment).

Thus, the specification of the new applications is different from the specification of the '579 and '025 patents. The new applications incorporate directly what the patentee failed to incorporate by reference in the patents-in-suit. As a result, the PTO was entitled to find that "coupling" as-defined by the new applications includes couplings with more than one fastener. The patents-in-suit, however, lack the portions of the new applications which provide support for that construction. Accordingly, the PTO's construction of "coupling" in the new applications does not convince the Court that it should alter its construction of "coupling" for the patents-in-suit. *Saunders Grp., Inc. v. Comfortrac, Inc.*, 492 F.3d 1326, 1333-34 (Fed. Cir. 2007) (statements concerning one claim term generally do not apply to construction of a different claim term in a related application). Thus, the Court denies Victaulic's motion to vacate the Court's claim construction.

### B. Motion to Alter or Correct the Court's Judgment Regarding ASC's Royalty Payments

On May 8, 2023, the Court ruled the royalty that ASC was required to pay under the parties' settlement agreement is properly apportioned to the SlideLOK 74FP coupling. D.I. 358. Victaulic contends that the Court's apportionment ruling is procedurally improper because the Court found the contract provision ambiguous and then continued to interpret that provision rather than sending

the issue to jury. *See* Opening Br. at 8-10. The Court finds that Victaulic waived its right to a jury trial on the issue of apportionment.

In the Court's Order regarding the parties' Motions in Limine (D.I. 308), the Court ordered the parties to submit letter briefing explaining "whether and, if so, how the Court and jury should rule upon whether the royalty ASC pays under the parties' settlement agreement is properly apportioned to the SlideLOK 74FP coupling . . . " In other words, the Court asked the parties for their positions on whether this issue was an issue for the jury to decide. Victaulic took the position that "the apportioned royalties issue is for the Court" because the contract was not ambiguous. Indeed, Victaulic argued that ASC had waived this issue by "fail[ing] to include any question about the supposed correctness of its royalty apportionment on its proposed jury verdict form." *See* D.I. 298; D.I. 309 at 1-2.

Victaulic contends that it did not knowingly waive its right to a jury trial on the interpretation of apportionment because the Court found that the contract language was ambiguous even though both parties agreed that the contract was subject to only one reasonable interpretation. However, Victaulic agreed that "this apportionment dispute is for the Court" and asked the Court to consider "the actual trial evidence." D.I. 357 at 4-5. Because Victaulic contended that ASC waived the right to a jury trial on this issue by failing to provide a specific jury instruction, Victaulic certainly knew it was waiving the right to a jury trial on this issue by agreeing that the issue was for the Court to decide and by asking the Court to consider factual issues while resolving the dispute. Accordingly, the Court finds that Victaulic knowingly and voluntarily waived its right to a jury trial on the issue of apportionment.

The Court resolved the ambiguity with respect to the term "Anvil Products" by finding that "Anvil Products" referred to the coupling. The Court's finding was supported by the evidence.

ASC's VP of sales testified that ASC paid royalties for sales of the coupling sold by itself and provided a letter explaining how ASC used cost-based apportionment. D.I. 362-1, Ex. A at 463:21-465:1; DTX011 at 10. In addition, the Court recognizes that the parties negotiated in the shadow of the law, and that the law would require apportionment. *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-27 (Fed. Cir. 2014). Thus, the Court finds that the royalty rate in the settlement agreement was directed to the coupling.[1]

### C. Renewed Motion for JMOL of Direct Infringement

Victaulic moves under Rule 50 that no reasonable jury could have found that ASC did not directly infringe claims 1-4 and 9 of the '796 patent. Opening Br. at 11. The jury heard dueling testimony with respect to the "substantially conform" limitation. This limitation required coupling segments to be "deformable upon adjustable tightening of said connection members so as to substantially conform the curvature of said arcuate surfaces to the outer surfaces of said pipe elements within said circumferential grooves." '796 patent at claim 1. Dr. Cameron testified that the plain meaning of the "substantially conform" limitation required complete contact over the interface between the arcuate surfaces and the outer surfaces. *See* D.I. 362-1, Ex. A at 542:16-544:3, 557:2-16, 661:20-667:5; *Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1359-60 (Fed. Cir. 2017) (juries are free to determine the "plain meaning" of unconstrued terms). Victaulic contends for the first time in post-trial briefing that Dr. Cameron's interpretation of the "substantially conform" limitation was an improper claim construction. *Compare* D.I. 200, Ex. 9

---

[1] Indeed, the Court finds the royalty rate was directed to the coupling whether or not the term is deemed "ambiguous." As a matter of law, the only reasonable way to give intention to the parties' language is to recognize that the couplings were independent Anvil Products. Doing so comports with standard practice in the industry, the contract language, and the practice of the parties to have paid the royalty rate on the coupling as independent products.

at 22 (Dr. Cameron setting out this opinion in her rebuttal expert report) *with* D.I. 361 at 11 (Victaulic claiming for the first time that Dr. Cameron's analysis was improperly narrow).    "[I]t is too late at the JMOL stage to argue for or adopt a new and more detailed interpretation of the claim language and test the jury verdict by that new and more detailed interpretation." *Hewlett-Packard Co. v. Mustek Sys.*, 340 F.3d 1314, 1321 (Fed. Cir. 2003).    Accordingly, the Court denies Victaulic's JMOL motion as to non-infringement.[2]   The Court also denies Victaulic' motion for a new trial on non-infringement for the same reasons.

### D. Renewed Motion for JMOL on ASC's License Defense

Victaulic contends that it is entitled to JMOL as to ASC's licensing defense, because no reasonable jury could believe that the Accused SLT Products were Anvil Products or permitted variations.    Opening Br. at 13.    However, the jury heard substantial testimony that the SLT Products could include a licensed coupling and that the license provision permitted combining the licensed couplings with preinstalled elements.    D.I. 362-1, Ex. A at 134:1-2; 134:24-135:25, 138:8-9, 653:25-654:6, 790:13-791:5, 844:3-16, 996:4-997:9.

Victaulic also contends that the Court's instruction with respect to ASC's license defense was erroneous.    However, the Court's instruction and the jury's finding were consistent with Delaware contract law, which states that a license to "use, sell . . . and otherwise dispose" of a product includes a license to combine.    *Sanyo Electric Co. v. Intel Corp.*, No. 2018-0723-MTZ, 2021 Del. Ch. LEXIS 35, at *20 (Ch. Feb. 26, 2021).    The Court instructed the jury that "ASC has the burden of proving by a preponderance of the evidence that ASC has a license to make, have

---

[2] Moreover, the jury had ample evidence to find that ASC won on its license defense.  The jury was instructed that "ASC cannot be liable for infringement if ASC proves by a preponderance of the evidence that the Settlement Agreement permits ASC to make . . . or otherwise dispose of the accused products."  D.I. 346 (Final Jury Instructions) at 19.

made, use, offer to sell, sell, have sold, export and have exported, import and have imported, distribute and have distributed or otherwise dispose of the accused products." D.I. 339, Ex. 2 at 1; D.I. 346 at 3. The jury was entitled to weigh the evidence that the license included a right to combine in reaching its conclusion that that the license permitted ASC to combine the licensed couplings with other products.

The jury was also entitled to find in favor of ASC on its theory that the "product license" which Victaulic granted to ASC was meant to resolve all of the parties' potential disputes by providing ASC "all the rights it needed to take any of a broad set of actions with respect to the licensed products," rather than merely license a few limited couplings. Victaulic did not respond to this argument in its Reply Brief, and there was substantial evidence in the record that the intent of the parties was to permit a broad license for ASC's products. *See* Reply Br. at 6-8; JTX007.003; JTX007.004; D.I. 362-1, Ex. A at 493:3-7, 496:21-24, 497:11, 498:3-5, 498:21-500:4, 501:22-25, 502:12-15, 507:2-5, 509:19-510:1, 511:23-513:4, 513:10-11. The jury thus had two independent bases to find in ASC's favor on its licensing defense. Accordingly, the Court denies Victaulic's motions for JMOL and for a new trial on the licensing defense.

### E. Alternative Motion for a New Trial

Victaulic also contends that it is entitled to a new trial because the Court improperly instructed the jury on the meaning of a term that the Court found ambiguous ("Anvil Product"). Opening Br. at 16-19. ASC disagrees, and contends that Victaulic waived this objection. Answering Br. at 17. The parties proposed competing jury instructions on licensing, which the Court resolved by stating, in Instruction 4.5, that "[a] product need only fall under one of the two portions of the definition of 'Anvil Product' to be considered an 'Anvil Product.'" *See* D.I 301 at 29-31; D.I. 319-1 at 31. Victaulic disputed that ruling, and filed a letter requesting that the Court

include additional language in that instruction, on the grounds that "[w]hile not technically inaccurate, Victaulic fears that such a statement could be understood to mean that the Court has adopted ASC's argument that the jury need not even read the permissible variations language to understand how the parties defined 'Listed Couplings.'" D.I. 339-1 at 1. Victaulic argued that it "*may* be erroneous for the Court to start construing parts of a definition." *Id.* at 2 (emphasis added). However, Victaulic did not object to Instruction 4.5 during the charge conference after learning that the Court would not adopt Victaulic's requested additional language. D.I. 362-1, Ex. A at 928:9-946:10.

To preserve an objection, the party making it "must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). "[O]bjections to a [jury] charge must be sufficiently specific to bring into focus the precise nature of the alleged error. Where a party might have obtained the correct charge by specifically calling the attention of the trial court to the error and where part of the charge was correct, he may not through a general exception obtain a new trial." *Palmer v. Hoffman,* 318 U.S. 109, 119, (1943). All that is required is that the district court had "an opportunity to rule." *Remington Rand Corp. v. Bus. Sys., Inc.,* 830 F.2d 1260, 1267 (3d Cir.1987). The Court finds that Victaulic's objection was properly preserved as to the arguments raised in its letter brief (D.I. 339-1). Victaulic clearly identified what it thought was error (adopting ASC's position with respect to whether the "permissible variations" language controlled the "Listed Couplings" language, and construing a portion of a term that the Court previously construed as ambiguous) and gave the Court an opportunity to rule on that issue. However, Victaulic did not properly raise its third ground for its objection (i.e. that the instruction would lead to an absurd result). Accordingly, the Court has never ruled on that objection because it has not had the opportunity to do so. Thus, Victaulic waived its objection.

In any event, the Court finds that Instruction 4.5 correctly indicated to the jury that the scope of the term "Anvil Product" was ambiguous. Some ambiguity within a contract clause does not prevent the Court from providing instruction to the jury on how to interpret parts of the contract that are not ambiguous. *Compare Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 17-cv-189-LPS, D.I. 153 at 8-16 (concluding that certain aspects of § 2.1 of a license are ambiguous) *with Roche*, 17-cv-189-LPS, D.I. 274 at 21, 38-39 (providing instructions relating to § 2.1). To hold otherwise would improperly divide the role of the Court and the jury—ambiguity in a term must go to the jury. But where a term is not ambiguous, the Court should give guidance. The Court instructed the jury that "Anvil Product" was ambiguous. D.I. 28 at 9. The Court also provided the jury with Instruction 4.5, which produces verbatim the relevant contract language and breaks it into two parts to match its two clauses. Instruction 4.5 does not conflict with the Court's finding that whether "Anvil Products" was limited to couplings sold in a standalone manner was ambiguous. Thus, Instruction 4.5 was not improper.

The Court further finds that Instruction 4.5 did not improperly favor ASC's theory. First, Victaulic itself has made clear that the Court's instruction was "not technically inaccurate," and has provided no evidence that the jury would understand the Court's instruction to read out the remainder of the definitional language. D.I. 339-1. The jury was properly presented with the full context of the Settlement Agreement, including both sides' theories on how to approach the language the Court told the jury was ambiguous. The jury was entitled to interpret the parties' settlement agreement to find that the variations language does not control the meaning of "Listed Couplings," given the plain language of that settlement agreement. *See* JTX 019.002 ("including variations thereof . . . provided that such variations do not . . ."). Thus, even if the Court had

13

adopted ASC's position, that position would not constitute legal error given the lack of evidence to support Victaulic's position.

## IV.    CONCLUSION

For the reasons set forth above, the Court denies Victaulic's post-trial motions in full.